Opinion
 

 BARON, J.
 

 This appeal raises the issue of whether indigent children who did not reside with their parent or other legal guardian for more than six months prior to the date that the department of children and family services (DCFS) petitioned to officially remove them from custody of the parent or
 
 *72
 
 guardian can establish the “AFDC linkage” needed to qualify for federal foster care payments under former section 672 of title 42 of the United States Code. Each of the children involved here had been abandoned by his or her biological parents to the care of relatives more than six months prior to the date that DCFS filed a petition to remove from parental custody and place with a foster family. In each case, the petitions were granted and the children formally placed in the custody of the relatives who had been voluntarily assuming their care prior to the petition. Each of the children was receiving benefits under the federal Aid to Families With Dependent Children (AFDC) program through payment to the relative with whom they were residing at the time the petition to remove from parental custody was filed. In addition, each of the children would have been eligible for AFDC benefits had they been residing with their parent. But, according to regulations issued by the State Department of Social Services (the Department), none were eligible for federal foster care payments because they were not linked to AFDC through living with the parent from whose custody they were “removed” during the six-month period prior to the date the petition was initiated.
 

 Two trial courts in three separate decisions concluded that the Department violated the plain meaning of the governing statute, and granted the writ petitions of respondents Capitola Land, Maria Lopez, and Jean McCrumby, invalidating the regulations, and ordering the Department to reverse the denial of federal foster care payments. In addition, the Department was ordered to pay the attorney fees of respondents Land and Lopez. After careful review of the statutory provisions, the legislative history, the intent of Congress, and the purpose of the law, we concur with the trial courts, and affirm.
 

 Factual and Procedural History
 

 Land
 
 v.
 
 Anderson
 

 On December 1, 1990, or a few months thereafter, respondent Capitola Land's granddaughter, Sade, was left at John Land’s house by Sade’s mother (respondent’s daughter and Mr. Land’s niece). Mr. Land applied for and received AFDC benefits for Sade. DCFS filed a petition to remove Sade from the care and custody of her mother on October 30, 1991. Mr. Land became seriously ill, and died in August 1992. Sade went to live with respondent in July 1992. In September of 1992, respondent’s request for federal foster care benefits was denied by DCFS, acting on behalf of the Department. Respondent appealed, and the hearing officer reversed the denial because Sade had received AFDC benefits during the period from
 
 *73
 
 December 1, 1990, through August 21, 1992, while living with her great uncle. The Department’s director did not adopt the hearing officer’s determination, but upheld the decision to deny benefits because “the child, Sade L., did not live with her mother or her father during any of the six months prior to or during the month in which the October 30, 1991, petition was filed with the Juvenile Court, which led to the child’s removal from her parents’ custody and placement in foster care.”
 

 Respondent Land petitioned for a writ of mandate, seeking an order reversing the denial of federal foster care benefits. The trial court granted the petition and ordered the Department to issue federal foster care payments to respondent on behalf of Sade retroactive to September 1992. Subsequently, the court instructed the Department to pay $14,995 in attorney’s fees pursuant to Code of Civil Procedure section 1021.5 and Welfare and Institutions Code section 10962.
 

 Lopez
 
 v.
 
 Anderson
 

 Evelyn R. and Iliana R. lived in Puerto Rico with their mother. In October of 1990, Puerto Rico’s department of social services removed the children, along with another sibling, and placed them with a maternal aunt, Brunilda Gomez, in California. In June of 1991, Gomez wrote to DCFS stating that she was arranging with respondent Lopez to care for Evelyn and Iliana. The children began living with respondent on September 7, 1991. Respondent’s receipt of AFDC benefits for Evelyn and Iliana was effective June of 1991. DCFS filed a petition to remove the girls from the mother’s custody on August 12, 1993. At that same time, DCFS signed a relative caregiver agreement with respondent. The petition was granted on September 23, 1993, officially removing the girls from their mother and placing them with respondent.
 

 Respondent’s request for federal foster care payments was denied by DCFS on September 15, 1993, on the ground that Evelyn and Iliana did “not meet all eligibility requirements for federal participation in AFDC-FC [the federal foster care program].” Respondent requested a hearing. The hearing officer concluded that respondent was not entitled to federal foster care payments because, to meet the requirements, the child must either have been living in the home of the parent from whom removed during the month the petition was filed or within six months prior to the filing date.
 

 Respondent Lopez filed a petition for writ to overturn the determination. The trial court granted the writ, ordering the Department to approve federal foster care benefits for respondent on behalf of Iliana and Evelyn effective
 
 *74
 
 September 1993. As in the Land matter, the court later ordered payment of attorney’s fees under Code of Civil Procedure section 1021.5 and Welfare and Institutions Code section 10962, this time in the amount of $26,186.
 

 McCrumby
 
 v.
 
 Anderson
 

 Respondent McCrumby’s daughter has had nine children, all of whom have been removed from her custody, six of whom were placed with respondent. Deshone D. was informally placed with respondent at birth in May 1988. In August 1988, the mother abandoned Frederick B. and George R., and respondent picked them up and informed the DCFS case worker that the children were with her. Derrick J. was placed with respondent McCrumby by DCFS in December 1989, after being in foster care with a nonrelative for two months. Penelope J. and Kenisha H. were also placed with respondent at birth in May of 1991 and April of 1992, respectively. DCFS filed a petition to officially remove Deshone, Frederick, George, and Derrick from their mother on October 26, 1989. The petition to remove Penelope was filed in May of 1991; the petition to remove Kenisha was filed in April of 1992.
 

 In June of 1993, respondent’s request for federal foster care payments on behalf of all these children was denied by DCFS because there was insufficient information to determine the financial situation of the children’s mother. At the subsequent administrative appeal, the hearing officer concluded: (1) that denial was proper as to George and Frederick because their removal from the mother’s home was informal in that there was no court ordered placement; (2) that denial was proper as to Derrick, Penelope, and Kenisha, because DCFS was unable to establish their eligibility for AFDC through their mother; and (3) that denial was proper as to Deshone for both reasons.
 

 Like respondents Land and Lopez, McCrumby petitioned the trial court for relief from the denial of her request for federal foster care payments. While the petition was pending, DCFS located the mother, and was able to establish AFDC linkage for Derrick, Penelope, and Kenisha. The trial court concluded that Deshone, Frederick, and George were eligible as of the date of the October 1989 petition to remove them from their mother.
 

 The Department noticed timely appeals from the judgments entered in all three cases, and from the subsequent orders awarding attorney’s fees in the Land and Lopez cases. All the appeals were consolidated.
 

 
 *75
 
 Discussion
 

 I
 

 Under the federal AFDC program applicable here,
 
 [1]
 
 federal funds were made available to those states which submitted and had approved by the Department of Health, Education and Welfare a plan for aid and services to needy families with children. Although the program was elective, once a state chose to join, its plan had to comply with the mandatory requirements established by the Social Security Act, as interpreted and implemented by regulations promulgated by the Department of Health, Education and Welfare.
 
 (County of San Mateo
 
 v.
 
 Dell J.
 
 (1988) 46 Cal.3d 1236, 1242 [252 Cal.Rptr. 478, 762 P.2d 1202];
 
 County of Alameda
 
 v.
 
 Carleson
 
 (1971) 5 Cal.3d 730, 738-739 [97 Cal.Rptr. 385, 488 P.2d 953].) One of the requirements for participation in the AFDC program was that the state have in effect a state plan for foster care.
 
 (County of San Mateo
 
 v.
 
 Dell
 
 J.,
 
 supra,
 
 at p. 1243.)
 

 Section 672(a) of title 42 United States Code defines those children for whom federal foster care payments must be made available by the states. During the period relevant to this litigation,
 
 [2]
 
 it provided in part: “Each State with a plan approved under this part shall make foster care maintenance payments (as defined in section 675(4) of this title) under this part with respect to a child who would meet the requirements of section [
 
 3
 
 ] of this title or of section 607[
 
 4
 
 ] of this title but for his removal from the home of a relative (specified in section 606(a) of this title), if— HD (1) the removal
 
 *76
 
 from the home occurred pursuant to a voluntary placement agreement entered into by the child’s parent or legal guardian, or was the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child and (effective October 1, 1983) that reasonable efforts of the type described in section 671(a)(15) of this title have been made; [U (2) such child’s placement and care are the responsibility of (A) the State agency administering the State plan approved under section 671 of this title, or (B) any other public agency with whom the State agency administering or supervising the administration of the State plan approved under section 671 of this title has made an agreement which is still in effect; HD (3) such child has been placed in a foster family home or child-care institution as a result of the voluntary placement agreement or judicial determination referred to in paragraph (1);
 
 and
 
 [^Q
 
 (4) such
 
 child—
 
 m (A) received aid under the State plan approved under section 602 of this title in or for the month in which such agreement was entered into or court proceedings leading to the removal of such child from the home were initiated, or
 
 [^Q
 
 (B)(i) would have received such aid in or for such month if application had been made therefor, or (ii) had been living with a relative specified in section 606(a) of this title within six months prior to the month in which such agreement was entered into or such proceedings were initiated, and would have received such aid in or for such month if in such month he had been living with such a relative and application therefor had been made”
 
 (Former 42 U.S.C. § 672(a); Act of Dec. 22, 1987, Pub.L. No. 100-203, tit.
 
 IX,
 
 §§ 9133(b)(2), 9139(a), 101 Stat. 1330-314, 1330-321, italics added.)
 

 There is no dispute that the first three requirements of 42 United States Code section 672(a) were met: The children were removed from their homes pursuant to a judicial determination that continuation would be contrary to their welfare and after reasonable efforts to keep the child in the home were made (§ 672(a)(1)); the children’s placement and care were and are the responsibility of the Department of Children’s Services (DCS), the agency appointed by the Department to administer the state plan (§ 672(a)(2)); and the children are in foster family homes as the result of the same judicial determination that concluded continuation in the prior home would be contrary to their welfare (§ 672(a)(3)). The debate is over the proper interpretation of section 672(a)(4), known as the AFDC linkage requirement.
 

 Respondents and their supporters contend that the plain language of 42 United States Code section 672(a)(4)(A) and (a)(4)(B)(i) qualifies all those children who were receiving AFDC benefits in the month in which court
 
 *77
 
 proceedings leading to the removal were initiated, or who would have received such aid if application had been made, without regard to whether or not they are physically residing with the parent or other legal guardian from whose custody they are being removed. Respondents rely on the oft expressed principle of statutory construction that where the words of the statute, given their ordinary definitions, are reasonably free from ambiguity, one should look no further to ascertain the statute’s meaning. (See, e.g.,
 
 Botello
 
 v.
 
 Shell Oil Co.
 
 (1991) 229 Cal.App.3d 1130, 1135 [280 Cal.Rptr. 535];
 
 City of Los Angeles
 
 v.
 
 Los Olivos Mobile Home Park
 
 (1989) 213 Cal.App.3d 1427, 1433 [262 Cal.Rptr. 446].)
 

 The Department relies on the recognized exception to the plain meaning rule, that the literal words of a statute may be disregarded where necessary to avoid absurd results or to give effect to a manifest purpose that appears from the statute’s legislative history or its provisions considered as a whole. (See, e.g.,
 
 County of Sacramento
 
 v.
 
 Hickman
 
 (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593]; see
 
 Napa Valley Educators’ Assn.
 
 v.
 
 Napa Valley Unified School Dist.
 
 (1987) 194 Cal.App.3d 243, 248 [239 Cal.Rptr. 395] [“The various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]”].) The Department contends that the interpretation proposed by respondents is contrary to the purpose of the statute as expressed by Congress in enacting the applicable version of 42 United States Code section 672, and would render section 672(a)(4)(B)(ii) superfluous. The Department urges that we defer to the interpretation of the statute set forth in their regulations and statements of policy and the decisions of the appellate division of the United States Department of Health and Human Services. We turn to these contentions.
 

 A
 

 The Department’s interpretation of the statute as excluding those children linked to AFDC through someone other than the parent or guardian from whom removed depends on the language of 42 United States Code section 672(a)(4)(B)(ii). That subdivision qualifies children who had been “living with a relative specified in section 606(a)” within six months of the date a voluntary placement agreement was entered into or a judicial determination resulted in the removal of the child from the home. The language appears to draw a distinction between “living with” a relative and being “removed from” the custody of that relative. According to the Department’s interpretation, the distinction means that this subdivision is to be applied whenever a child is no longer physically living with the relative whose legal custody DCFS is challenging. If the child is residing with someone other than that
 
 *78
 
 parent or guardian, and a petition to formalize the custody change is filed within six months, then the child can qualify for federal foster care payments. But if for any reason—including the fault of DCFS—a petition to legally remove a child from the custody of the parent or guardian is not initiated within six months of the date the child ceases to live with the parent or guardian, the child and his or her foster parent can never establish entitlement to federal foster care payments.
 

 Once 42 United States Code section 672(a)(4)(B)(ii) is construed as a limitation on the length of time an indigent child can reside apart from his parent or legal guardian and still obtain federal foster care payments, then section 672(a)(4)(A) and (a)(4)(B)(i) must be seen in a whole new light, under the Department’s construction. The Department would read into those provisions a requirement that the child in question be physically residing with the parent or legal guardian from whom removal is sought, and that the determination of whether he is receiving AFDC under section 672(a)(4)(A) or entitled to AFDC under section 672(a)(4)(B)(i) be made with reference to that parent or guardian.
 

 The Department has promulgated regulations which codify its interpretation of the statute. According to these regulations: “The child shall have been linked to the federal Aid to Families with Dependent Children - Family Group/Unemployed (AFDC-FG/U) Program during the month in which the petition was filed with the juvenile court, which led to the child’s placement into foster care pursuant to a detention or dispositional order. This linkage requirement is met if one of the following conditions exists during the month in which the petition was filed: [¶] .311 The child was living in the home of the parent or relative from whom removed, was eligible for, and received federal AFDC-FG/U. [¶] .312 The child was living in the home of the parent or relative from whom removed and would have been eligible for federal AFDC-FG/U had application been made. [¶] .313 The child was no longer living in the home of the parent or relative from whom removed, but would have been eligible for federal AFDC-FG/U based on that parent’s or relative’s home had he/she been living there and had application been made. [‘JO (a) To meet this condition, the child shall have been living with the parent or relative from whom removed, within any of the six months prior to the month in which the petition was filed with the juvenile court, which led to the child’s placement into foster care pursuant to a detention or dispositional order.” (Cal. Dept, of Social Services Manual of Policies & Procedures, Manual Letter No. EAS-91-14, Reg. No. 45-202, § .3 (eff. Oct. 1, 1991), p. 643.)
 

 The Department seeks to support its interpretation of 42 United States Code section 672(a)(4)(B)(ii) by citation to legislative history. The statute
 
 *79
 
 governing eligibility for federal foster care payments was originally enacted in 1961.
 
 [5]
 
 The 1961 version stated: “(a) the term ‘dependent child’ shall notwithstanding section 406(a), also include a child (1) who would meet the requirements of such section 406(a) or of section 407 except for his removal after April 30, 1961, from the home of a relative (specified in such section 406(a)) as a result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child, (2) for whose placement and care the State or local agency administering the State plan approved under section 402 is responsible, (3) who has been placed in a foster family home as a result of such determination, and (4)
 
 who received aid under such State plan in or for the month in which court proceedings leading to such determination were initiated
 
 . . . .” (Act of May 8, 1961, Pub.L. No. 87-31, § 408(a), 75 Stat. 76, italics added.)
 

 The Department asserts that under the 1961 version of the act, federal foster care payments were available solely to those children who were both physically residing with the abusive or negligent parent or guardian and were receiving AFDC benefits. In that case, the argument goes, the 1967 amendments, which added 42 United States Code section 672(a)(4)(B)(i) and (ii), can only be seen as expanding federal foster care payment eligibility to two new categories of children: (1) those residing with custodial parents or guardians who had neglected to apply for or obtain AFDC benefits, and (2) those who were abandoned by their parent or guardian prior to a petition to remove from custody being filed, but only where action was taken on their behalf within six months.
 

 The obvious fallacy in the Department’s analysis is that the original AFDC linkage requirement contained essentially the same language as the applicable version of 42 United States Code section 672(a)(4)(A). It mandated that children “who received aid under such State plan in or for the month in which court proceedings leading to such determination [that continuation in the home would be contrary to the welfare of such child] were initiated . . . ,” and who met the other three requirements, be considered qualified for federal foster care benefits. As with the applicable language of section 672(a)(4)(A), the plain text of the 1961 version required only that the children be receiving AFDC benefits in the month in which the petition was initiated and contained no express obligation that the children receive such
 
 *80
 
 benefits while physically residing with the parent or guardian from whom they were removed. The most that can be said for the Department’s position in this regard is that the same conflicting interpretations with which we are faced today could have been raised under the predecessor statute.
 

 The Department’s attempt to rely on the reports of the congressional committees responsible for the 1967 amendments is equally vain. The Department believes that these reports demonstrate a legislative intent to limit federal foster care payments to children living with their parent or legal guardian during the six months preceding the petition to remove. In fact, the reports demonstrate that Congress was primarily focused on eliminating the distinction between indigent children actually receiving AFDC benefits and those entitled to such benefits but who had, for whatever reason, failed to obtain them. In this regard, the House Committee on Ways and Means had this to say: “Your committee believes that some children now receiving AFDC would be better off in foster homes or institutions than they are in their own homes. . . . Under the AFDC program, as amended in 1961, Federal funds are available for the care of children in foster family care or in voluntary institutions if they were recipients of AFDC when they were removed from their home by a court. ... [^0 Your committee is aware of the limitations on the provision described above for foster care through the AFDC program when children are removed from their home by court order. For the State to receive any Federal sharing, the children must be recipients of AFDC when the court issues its order. Your committee believes that this is an unduly limiting restriction and is proposing that this limitation be changed. There is some evidence that courts may be reluctant to place a child in foster care because Federal funds are not available (and the cost of the care must come out of local funds in many areas) unless the child is in the home of a specified relative. The proposed change would make the cost of caring for children in foster care subject to Federal sharing if the child has been placed in foster care by a court order (if the child is removed from the home of a relative as a result of a judicial determination that continuation in such home would be contrary to his welfare) and if the child would have been eligible for aid under the AFDC program if an application had been made on his behalf.”
 
 [6]
 
 (H.R.Rep. No. 544, 90th Cong., 1st Sess., pp. 100-101 (1967).) It is obvious from this language that the main intent of the amendments was to make federal foster care payments available for those children whose parent or legal guardian had neglected to apply for AFDC benefits. 42 United States Code section 672(a)(4)(B)(i) allowed the foster parent to collect federal foster care payments as long as the child was entitled to the AFDC aid.
 

 
 *81
 
 In comparison, the House Committee on Ways and Means had relatively little to say about the purpose of 42 United States Code section 672 (a)(4)(B)(ii). The Department relies heavily on the statement that the proposed amendments would “[a]lso includ[e] . . . children placed under court order who had been living with one of the specified relatives enumerated in the law within 6 months and would have been eligible upon application for AFDC if he were living with such relative and were removed from the home of such relative by order of the court.” (H.R.Rep. No. 544,
 
 supra,
 
 at p. 101.) This emphasis on one sentence of the report ignores the context in which this comment was made. In the next few sentences the committee explains: “This latter group would include some children already in foster care at the time of this legislation and who, except for this provision, would not be eligible because they had already been removed from their homes. Temporary plans may be needed, for example, for children both of whose parents are killed in an accident and for whom the court does not take immediate jurisdiction.
 
 The child need not live with a relative and may be in a foster family home or in a voluntary institution at the time the court makes its decision.” {Ibid.,
 
 italics added.)
 

 It is apparent from these comments that Congress expected 42 United States Code section 672(a)(4)(B)(ii) to give section 672(a)(4)(B)(i) a slight retroactive effect and bring in some of those unfortunate children who had been placed with a foster family prior to the enactment of the 1967 amendments but, because of an earlier failure to obtain AFDC benefits, would not without this language have been entitled to federal foster care payments. In addition, as the committee pointed out, section 672(a)(4)(B)(ii) would cover the emergency situation where a child had to be placed in foster care before official action could be taken, as—using the example given by the committee—where both parents die suddenly. In either of those two cases “[t]he child need not live with a relative and may be in a foster family home or in a voluntary institution at the time the court makes its decision” and still qualify for federal foster care payments—as long as all of the other qualifying factors were in place within six months. (H.R.Rep. No. 544,
 
 supra,
 
 at p. 101.) Missing from the legislative history is any suggestion that section 672(a)(4)(B)(ii) was designed to apply to the situation we are faced with here, where the parent or other legal guardian abandons the child
 
 with relatives
 
 who can themselves obtain AFDC with respect to the child, and DCFS is either not called in or does not act before more than six months had gone by.
 

 B
 

 The Department urges that we defer to its expertise or that of the United States Department of Health and Human Services, and accept their interpretation as true and correct. The simple response to that contention is that
 
 *82
 
 “final interpretation of a statute is a question of law and rests with the court. [Citations.]”
 
 (Department of Water & Power
 
 v.
 
 Energy Resources Conservation & Development Com.
 
 (1991) 2 Cal.App.4th 206, 220 [3 Cal.Rptr.2d 289]; accord,
 
 Dyna-Med, Inc.
 
 v.
 
 Fair Employment & Housing Com.
 
 (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323].)
 

 Moreover, the circumstances under which deference typically takes place are absent from the record here. “The
 
 contemporaneous
 
 construction of a new enactment by the administrative agency charged with its enforcement ... is entitled to great weight. [Citations.]”
 
 (Dyna-Med, Inc.
 
 v.
 
 Fair Employment & Housing Com., supra,
 
 43 Cal.3d at pp. 1388-1389, italics added.) The Department regulations to which our attention has been drawn appear to have been promulgated on October 1, 1991, decades after passage of the federal act.
 

 Insofar as the federal agency is concerned, we are directed to a 1994 decision of the appellate division of the United States Department of Health and Human Services arising out of a New York case. Not only does this decision fail the temporal test, but it gives no particular insight into the opinion of the entire agency, as it is not a formal regulation, adopted after notice and hearing. We are, therefore, not bound to give it special consideration. (See, e.g.,
 
 Jones
 
 v.
 
 Tracy School Dist.
 
 (1980) 27 Cal.3d 99, 107 [165 Cal.Rptr. 100, 611 P.2d 441];
 
 City of Los Angeles
 
 v.
 
 Los Olivos Mobile Home Park, supra,
 
 213 Cal.App.3d at p. 1433.)
 

 “In any event, administrative construction of a statute, while entitled to weight, cannot prevail when a contrary legislative purpose is apparent. [Citations,]”
 
 (Pacific Legal Foundation
 
 v.
 
 Unemployment Ins. Appeals Bd.
 
 (1981) 29 Cal.3d 101, 117 [172 Cal.Rptr. 194, 624 P.2d 244].) Our task, first and foremost, “is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.”
 
 (Dyna-Med, Inc.
 
 v.
 
 Fair Employment & Housing Com., supra,
 
 43 Cal.3d at p. 1386.) “ ‘[T]he objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration . . . .’ ”
 
 (People
 
 ex rel.
 
 S. F. Bay etc. Com.
 
 v.
 
 Town of Emeryville
 
 (1968) 69 Cal.2d 533, 543 [72 Cal.Rptr. 790, 446 P.2d 790].)
 

 The single theme which permeates the subject statute and its legislative history is that “foster family care is more costly than care in the child’s home” and that “courts may be reluctant to place a child in foster care because Federal funds are not available . . . .” (H.R.Rep. No. 544,
 
 supra,
 
 at p. 101.) “AFDC-FC payments are greater than basic AFDC, upon recognition that foster children have greater needs and foster care is more costly than care for children in the parental home. [Citation.]”
 
 (King
 
 v.
 
 *83
 

 McMahon
 
 (1986) 186 Cal.App.3d 648, 653 [230 Cal.Rptr. 911], citing
 
 Ramos
 
 v.
 
 Montgomery
 
 (S.D.Cal. 1970) 313 F.Supp. 1179, 1181-1182, affd. 400 U.S. 1003 [91 S.Ct. 572, 27 L.Ed.2d 618].)
 

 42 United States Code section 672(a)(4)(A) and (a)(4)(B)(i) appear on their face to require only that the child be receiving or be eligible to receive AFDC payments when the petition for removal is filed. As AFDC can be obtained through a relative other than the one from whom removal is sought, physical residence with the parent or guardian appears to be irrelevant. If the Department is to be believed, a child left in limbo for six months because the parent has abandoned him or her with someone who was not the official custodian or because the county failed to file a petition after removing the child from parental custody within six months, is a child forever disqualified. This makes very little sense. We can imagine no reason why Congress would establish a system where an abused and neglected child’s need for foster care payments is measured by the actions or inactions of the parent from whom custody is being wrested, other adults who do not have legal custody, or the county’s department of children’s services. If Congress had intended to draw a distinction between needy children living with their parents and needy children abandoned by their parents and create a sort of statute of limitations within which the abandoned child’s benefactors must act or forever lose the right to federal foster care benefits, surely it would have said so directly.
 

 The objective of ensuring that greater funds be available to ensure the proper care of abused and neglected children is best achieved by construing 42 United States Code section 672(a)(4)(A) and (a)(4)(B)(i) in accordance with their plain words rather than by searching for a construction which would exclude many abandoned children. Congress, by not including the language linking federal foster care benefits to the parent or legal guardian which the Department would have us read into section 672(a)(4)(A) and (a)(4)(B)(i), intentionally focused on the needs of the child rather than the circumstances of the abusive and neglectful parent, and made all children entitled to or receiving AFDC eligible for federal foster care payments.
 

 42 United States Code section 672 requires that states make federal foster care payments available for children “who would meet the requirements of section 606(a) of this title or of section 607 of this title but for his removal from the home of a relative (specified in section 606(a) of this title) . . . .” (§ 672(a).) The children here would have met the section 606(a) requirements but for their removal. When the petitions to remove the children were filed, each of the children was a “dependent child” by virtue of the “continued absence from the home ... of a parent . . . .” (§ 606(a)(1).) In
 
 *84
 
 addition, as we have seen, the removal occurred pursuant to a judicial determination that continuation would be contrary to the welfare of the child and reasonable efforts to prevent the need for removal were made, meeting 42 United States Code section 672(a)(1); the children’s placement and care were the responsibility of DCFS, the public agency with whom the Department had an agreement, meeting section 672(a)(2); the children were placed in a foster family home as the result of the judicial determination, meeting section 672(a)(3); and at the time the petition to remove from custody was initiated, each child “received [AFDC] aid under the State plan approved under section 602 of this title” as required by section 672(a)(4)(A).
 

 The trial court’s rulings that the children qualified for federal foster care payments under the federal statute were correct.
 

 II
 

 The Department challenges the amount of attorney’s fees awarded in the Land and Lopez writ proceedings. We note from the record that petitioner Lopez sought $39,279 representing 114.8 hours of attorney time billed at $250 and at $145, 9 hours of paralegal time billed at $75, and a 1.5 multiplier. Petitioner in Land sought $22,492.50, representing 79.2 hours of attorney time billed at $250, $200, and $145, and a 1.5 multiplier. The court awarded fees based on the actual hours worked with no multiplier, or $26,186 and $14,995, respectively.
 

 The standard for review of a trial court’s award of attorney’s fees is abuse of discretion, “which will be found only where no reasonable basis for the court’s action is shown. [Citation.]”
 
 (Citizens Against Rent Control
 
 v.
 
 City of Berkeley
 
 (1986) 181 Cal.App.3d 213, 233 [226 Cal.Rptr. 265].) The amounts awarded by the court in the Land and Lopez matters were substantiated by the evidence presented by petitioners and their attorneys. Moreover, spending a total of approximately 200 hours on the 2 petitions does not appear to us to be excessive given the novelty of the issues presented and the need for exhaustion of administrative remedies. We see no basis for overturning the trial court’s determination in this regard.
 

 Disposition
 

 The judgment is affirmed.
 

 Vogel (C. S.), P. J., and Epstein, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied July 30, 1997.
 

 [1]
 

 The AFDC program was amended by the Welfare Reform Act of 1996. (Pub.L. No. 104-193 (Aug. 22, 1996) 110 Stat. 2105.) The provisions of the act do not become effective until July 1, 1997. (Pub.L. No. 104-193 (Aug. 22, 1996) § 116, 110 Stat. 2181.) We are not here concerned with these changes wrought by the act, and express no opinion concerning their impact on the federal foster care program.
 

 [2]
 

 This subdivision has also been amended subsequent to the events described above. (Pub.L. No. 104-193 (Aug. 22, 1996) § 108, 110 Stat. 2166-2167.) For purposes of this opinion, we will refer to the legislation in effect at the relevant time.
 

 [3]
 

 Under former section 606(a), the term “dependent child” was defined as “a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home” and meets the age requirements. (Act of Aug. 16, 1984, Pub.L. No. 98-378, § 20(a), 98 Stat. 1322.)
 

 [4]
 

 Former section 607(a) added to the definition of dependent child those needy children who met the age requirements of section 606(a)(2), and who had “been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of the parent who is the principal earner, and who is living with
 
 *76
 
 any of the relatives specified in section 606(a)(1) . . . .” (Act of Nov. 5, 1990, Pub.L. No. 101-508, tit. V, §§ 5061(a), 5062(a), 104 Stat. 1388-231, 1388-232.)
 

 [5]
 

 It was then part of title IV-A of the Social Security Act. In 1967, the statute was amended and the current language was added. (Act of Jan. 2, 1968, Pub.L. No. 90-248, 81 Stat. 821, 892-893.) In 1980, Public Law No. 96-272 expanded the AFDC-Foster Care program established by Public Law No. 87-31 and shifted it to title IV-E of the Social Security Act. Public Law No. 96-272 did not make any changes in the relevant statutory language as it was originally enacted in 1961 and amended in 1967. (See Pub.L. No. 96-272 (June 17, 1980) 94 Stat. 501, 503-504.)
 

 [6]
 

 The Senate Committee on Finance, which reviewed the bill on behalf of the Senate, contains essentially the same language. (Sen.Rep. No. 744, 50th Cong., 1st Sess., pp. 163-164 (1967), reprinted in 1967 U.S. Code Cong. & Admin. News, pp. 2834, 3000-3001.)