[No. B126094. Second Dist., Div. Four. Dec. 30, 1998.]

ELOISE ANDERSON, as Director, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MARIA LOPEZ, Real Party in Interest.

**COUNSEL**

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders, Laurie R. Pearlman, and Matthew E. Kearl, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Legal Aid Foundation of Los Angeles, Barbara Jones, Marjorie Shelvy, Yolanda Arias, Sujatha Branch; Western Center on Law and Poverty, Richard Rothschild, Robert D. Newman; National Center for Youth Law and Adam Culbreath for Real Party in Interest.

**OPINION**

**EPSTEIN, J.**—The trial court adjudicated petitioner, Eloise Anderson, in contempt of court. Petitioner is the Director of the State Department of Social Services (DSS). The conduct upon which the court based its order occurred in Ms. Anderson's performance of official duties as director. The basis of the adjudication was her disobedience of the court's order that she cease utilizing the DSS's manual of policy and procedure (MPP) sections 45-202.311 to 45-202.313 to determine eligibility for federal foster care

payments. We affirmed the underlying trial court order. (*Land* v. *Anderson* (1997) 55 Cal.App.4th 69, 84 [63 Cal.Rptr.2d 717] (*Land*).) We now intervene to determine whether a later enacted statute, Welfare and Institutions Code section 11402.1, divests petitioner of authority to comply with the trial court's order and whether petitioner may be adjudicated a contemner for executing that law. (All unlabeled statutory citations are to the Welfare and Institutions Code.)

We conclude that section 11402.1 is a valid law which petitioner is bound to apply, and that, under the circumstances of this case, it prevents her from complying with the underlying order. It follows, and we also conclude, that the trial court erred in its adjudication of contempt, which we annul.

### FACTUAL AND PROCEDURAL SUMMARY

The facts concerning real party in interest's eligibility for foster care payments are summarized in *Land*. The reader is referred to that decision, and we offer here only a brief reprise of facts relevant to the contempt proceeding. The Aid to Families with Dependent Children (AFDC) program (renamed Temporary Assistance for Needy Families) is set forth in title IV-E of the Social Security Act. (42 U.S.C. § 601.) It is a cooperative program of shared responsibilities between the state and federal governments. (See *King* v. *Smith* (1968) 392 U.S. 309, 316 [88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118].) Once a state chooses to join the program, as California has done, it must comply with an array of federal requirements. One of them is that it make federal foster care payments to eligible children. (*Land, supra,* 55 Cal.App.4th at p. 75.) Title 42 United States Code section 672 describes eligibility for foster care maintenance payments.

The trial court found that the MPP provisions defining eligibility for federal foster care failed to track the federal statute. It ordered petitioner to cease utilizing those provisions.[1] We affirmed that order in *Land*. The California Supreme Court denied review and the United States Supreme Court denied certiorari. Our remittitur issued on November 4, 1997.

Once *Land* became final, petitioner drafted an "All County Letter" explaining the change to the counties. (See appendix to this opinion.) The letter provides in part: "In Capitola Land, the Court of Appeals invalidated Eligibility and Assistance Standards (EAS) Manual, Section 45-202.313 which delineates the federal requirement that a child must have lived with

---

[1]The trial court also ordered petitioner to grant real party retroactive foster care benefits plus interest and to pay real party's attorney's fees. The trial court was satisfied that petitioner complied with those orders.

the parent or relative from whom removed in the petition month or within six months prior to the petition for removal, and that the child must have received or have been eligible to receive AFDC in the home of that parent or relative during the month of petition. Instead, the court held that a child living with a relative and eligible for AFDC in the home of that relative in the month of the petition for removal would be eligible for Title IV-E foster care benefits, even if the child had not lived in the home of the parent or relative from whom removed in the six months prior to petition and removal, regardless of whether AFDC linkage was established in the home of re-moval."[2]

On December 23, 1997, DSS submitted a proposed amendment of the state plan for implementation of the foster care program to the United States Department of Health and Human Services (DHHS). DHHS is responsible for approving state implementation plans. (See *State of Ohio* v. *Barron* (1997) 52 Cal.App.4th 62, 70 [60 Cal.Rptr.2d 342]; 42 U.S.C. § 602.) The purpose of the amendment was to bring California into compliance with federal eligibility requirements as construed in *Land*. DHHS rejected the proposed amendment. Its regional administrator explained: "This decision [to disapprove of the proposed amendment] is based on our position that the Capitola Land decision and your proposed State Plan amendment are clearly contrary to title IV-E statutory eligibility requirements for AFDC eligibility and the six-month limitation set forth at section 472(a) of the Social Security Act." DSS sought judicial review of that decision, and the issue is now before the Court of Appeals for the Ninth Circuit. (*State of California Department of Social Services* v. *Shalala* (98-70622).) The case was argued in December 1998.

While requesting federal approval, DSS also turned to the state Legisla-ture. Specifically, it "provided several drafts of the 1998 Assembly Bill 2779, sections 21 and 22 to the State Legislature." That bill was approved. It added section 11402.1 to the Welfare and Institutions Code. The statute provides: "For purposes of Section 11402, 'eligible for federal financial participation' means that the payment is consistent with an approved state plan under Sections 671 and following of Title 42 of the United States Code, authorizing federal financial participation in the payment. Notwithstanding any other provision of law, until and unless federal financial participation is obtained, no payment of AFDC-FC may be made from either state or county

---

[2]The parties dispute whether this letter adequately described the holding in *Land*. Real party argues that the letter ignores alternate means by which a child can establish linkage, and it limits the time a child can establish linkage to the month the juvenile petition is filed. In light of the conclusions we reach on the principal issues in this writ proceeding, we do not discuss the merits of these technical arguments.

funds on behalf of a child determined to be eligible for AFDC-FC solely as a result of the decision of the California Court of Appeal in Land v. Anderson (1997) 55 Cal.App.4th 69 [63 Cal.Rptr.2d 717]." (*Ibid.*) (Section 11402 concerns eligibility requirements for AFDC-FC funding.)

As required by the Budget Act of 1998, petitioner submitted a copy of the proposed All County Letter to the Department of Finance for approval. (See Budget Act of 1998, § 32.00 (Stats. 1998, ch. 324).) Based on section 11402.1, the Department of Finance rejected the letter. Thus MPP sections 45-202.311 to 45-202.313 remain in effect, a fact that is a basis of the trial court's contempt finding. The trial court stated: "The order [of May 1995] is simple with regard to the errant regulation—it requires respondent [petitioner] to 'cease utilizing' the subject sections. Respondent argues what the consequences will be if she ceases utilizing Sections 45- 202.311-.313 . . . . Respondent wants too much decided in this case. The consequences must be dealt with in a different forum, perhaps with different parties. Suffice it to say, all respondent has to do is cease utilizing the regulations. She is not obliged to take on any other burden as the result of the ceasing. [¶] It is simply not true that respondent cannot comply with the order."

Petitioner turned to this court for a writ of certiorari. We issued an immediate stay. We now grant the relief requested.

DISCUSSION

I

" 'The facts essential to jurisdiction for a contempt proceeding are "(1) the making of the order; (2) knowledge of the order; (3) ability of the respondent to render compliance; (4) willful disobedience of the order." [Citations.]' " (*Board of Supervisors* v. *Superior Court* (1995) 33 Cal.App.4th 1724, 1736 [39 Cal.Rptr.2d 906], quoting *In re Liu* (1969) 273 Cal.App.2d 135, 140-141 [78 Cal.Rptr. 85].) "[I]n writ proceedings to review an adjudication of contempt, '. . . the question whether the acts constituted a contempt is jurisdictional, and in the absence of evidence showing contempt, the order of commitment should be annulled. [Citations.]' . . . The evidence need not be reviewed in favor of the accused, however, since the inquiry should be whether there was any substantial evidence before the trial court to sustain its jurisdiction. [Citation.]" (33 Cal.App.4th at pp. 1736-1737.)

The parties dispute whether petitioner has authority to cease utilizing the MPP provisions determining eligibility for federal foster care. Petitioner claims section 11402.1 divests her of authority to comply with the

order. Real party in interest argues that petitioner can comply with the order by ceasing utilization of the MPP provisions, without any expenditure of funds. In the alternative, real party in interest contends that petitioner is responsible for her inability to comply with the cessation order because her department drafted and submitted the provision that was ultimately enacted as section 11402.1. Real party in interest argues that petitioner is not shielded from a contempt finding based on her obedience to the statute since she encouraged its enactment. We turn to these arguments.

## A

Petitioner cannot comply with the trial court's order without requiring the expenditure of additional funds. The effect of the trial court's order is to augment the class of children eligible for federal foster care. That will necessarily increase the number of children who will receive these payments, requiring the expenditure of more funds. That result is, in fact, the basis for this underlying litigation. Requiring petitioner to send the All County Letter changing the MPP provisions without ensuring the increased expenditures is as irresponsible as writing a check without the requisite funds. The argument that it does not require the expenditure of funds is sophistry; there is no meaningful distinction between issuing the All County Letter and directing the expenditure of funds for those who will qualify for AFDC-FC funding pursuant to the letter.[3]

According to real party in interest, petitioner could have taken other steps short of sending the letter. For example, she could have identified those children who would qualify for foster care payments under *Land*. But even if petitioner had identified those eligible, section 11402.1 still precludes any state or federal payment "until and unless federal financial participation is obtained . . . ." (§ 11402.1.) Real party in interest also argues that petitioner should have raised the money herself to comply with the order. Some authorities have required a city to raise money when it is ordered to pay for

---

[3] In *Hook* v. *Arizona Dept. of Corrections* (9th Cir. 1997) 107 F.3d 1397, the Ninth Circuit held that impossibility does not relate to a subsequent change in the law, but instead to physical impossibility of compliance. Similarly, in *Halderman* v. *Pennhurst State School & Hospital* (3d Cir. 1982) 673 F.2d 628, 639, the court concluded, "that in the circumstances here, where the contemnor participated in effectuating the change in the law which is alleged to establish a legal impossibility, sound policy does not permit the by-passing of the orderly route to appellate review provided by Rule 60(b)" of the United States Code. (*Ibid.* [Federal Rules of Civil Procedure, rule 60(b) (28 U.S.C) concerns relief from a judgment or order.]) Both *Hook* and *Halderman* involved injunctive relief, distinguishing them from this case. (*Hook* v. *Arizona Dept. of Corrections, supra,* 107 F.3d at p. 1399; *Halderman* v. *Pennhurst State School & Hospital, supra,* 673 F.2d at p. 629.) To the extent these cases hold or suggest that a subsequent change in the law can never constitute a valid defense to a contempt charge, we respectfully disagree.

services used. (See, e.g., *City of Culver City* v. *Superior Court* (1952) 38 Cal.2d 535, 539 [241 P.2d 258].) A city may levy a tax, impose other fees or tolls, or sell bonds to comply with such an order. (*Id.* at p. 540.) Those options are not available to petitioner. The trial court's order does not require her to personally raise the funds generally paid by the federal government, state government, and counties. Petitioner could not be held in contempt for failure to do so. (See *Board of Supervisors* v. *Superior Court, supra,* 33 Cal.App.4th at p. 1737 ["Punishment for contempt 'can only rest upon clear, intentional violation of a specific, narrowly drawn order. Specificity is an essential prerequisite of a contempt citation. . . .' " (Citation omitted.)].)

### B

Real party in interest also argues that petitioner cannot assert inability to comply as a defense because her department played a principal role in drafting the legislation that precludes her from complying. Generally, " ' "[c]ourts do not look with indulgence upon schemes, however skillfully devised, designed to thwart their orders." ' " (*Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 909 [141 Cal.Rptr. 133, 569 P.2d 727]; see also *United States* v. *Asay* (9th Cir. 1980) 614 F.2d 655, 660 ["Self-induced inability is not a defense to a contempt proceeding."].) But here the Legislature, not petitioner, was empowered to and chose to enact the statute. Even if petitioner supported the legislation, or even authored the draft that was enacted, she did not and could not enact it. Not surprisingly, real party in interest cites no authority supporting its contention that an individual or an entity that is successful in urging legislation to resolve an issue is estopped from asserting the legislation as enacted. Petitioner is not barred from asserting that she is unable to comply, a defense to a charge of contempt. (See *In re Cassil* (1995) 37 Cal.App.4th 1081, 1088-1089 [44 Cal.Rptr.2d 267] [inability to comply is a defense to contempt charge].)

### II

Real party in interest asserts that the new statute cannot aid petitioner because it is unconstitutional.[4] The parties agree that petitioner may refuse to enforce a statute based on its unconstitutionality only if an appellate court finds the statute unconstitutional. (Cal. Const., art. III, § 3.5, subd. (a).)

Section 11402.1 was enacted as an urgency measure, in effect immediately. (Cal. Const., art. IV, § 8, subd. (d).) Section 21 of Assembly Bill No.

---

[4]Petitioner's counsel, the Attorney General, argues that we cannot address this issue because the Department of Finance is an indispensable party and was not joined in the proceeding below, nor in the present petition. In the context of this contempt proceeding the Department of Finance is not an indispensable party. Its participation is not required for complete relief, nor are its interests left unprotected. (Code Civ. Proc., § 389, subd. (a).)

2779 (1997-1998 Reg. Sess.), the enacting vehicle, is an uncodified legislative finding of the reasons the statute was enacted: "In the recent case of Land v. Anderson (1997) 55 Cal.App.4th [69], the California Court of Appeal held that children residing with relatives are to be paid foster care benefits based on an interpretation of the federal statute that has not been accepted by the United States Department of Health and Human Services nor any federal court. [¶] . . . The Legislature hereby adopts an amendment to subdivision (a) of Section 11402 of the Welfare and Institutions Code that clarifies that the section has, at all times, including at the time of the Land decision, required that AFDC-FC payments can only be made to children residing with relatives if they are consistent with an approved IV-E State Plan which authorizes federal financial participation in the payment. The amendment is therefore declaratory of existing law. The Legislature furthermore adopts an amendment to subdivision (a) of Section 11402 of the Welfare and Institutions Code that states that payments may not be made to children residing with relatives whose eligibility for the federal foster care program is solely based on the eligibility criteria set forth in the Land decision." (Assem. Bill No. 2779 (1997-1998 Reg. Sess.) § 21, subd. (1)(A)(B).)

The Legislature further found and declared "that the sole purpose of these amendments is to ensure compliance with federal law and regulations pursuant to Title IV-E of the Socal [sic] Security Act that will result in the receipt of federal financial participation and is not an indication of legislative support for the current United States Department of Health and Human Services interpretation of federal statute and regulation as it relates to the issues raised in Land v. Anderson. It is the intent of the Legislature that the department continue to pursue federal financial participation for these payments and that when full federal financial participation is obtained, implementation of the payments for children will commence." (Assem. Bill No. 2779 (1997-1998 Reg. Sess.) § 21, subd. (2).)

A

██ A state law that conflicts with a federal statute is void under the supremacy clause of the United States Constitution (art.VI, cl. 2). (*Fleet* v. *CBS, Inc.* (1996) 50 Cal.App.4th 1911, 1918 [58 Cal.Rptr.2d 645].) "[T]he Federal Government, unless barred by some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the States shall be disbursed, and . . . any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid." (*King* v. *Smith, supra,* 392 U.S. 309, 333, fn. 34 [88 S.Ct. 2128, 2141].) No party to these proceedings argues otherwise.

The question here is not so easily resolved. It concerns a state court interpretation—our own—of a federal statute in a manner different from the construction given that law by the federal agency charged with its administration. The federal statute provides for a program based on "a scheme of cooperative federalism." (*King* v. *Smith, supra*, 392 U.S. at p. 316 [88 S.Ct. at p. 2133].) To maintain the "cooperative federalism," the state Legislature enacted a statute designed to ensure conformity between the state and federal programs. The issue is whether the statute enacted by the state Legislature violates the federal Constitution.

According to real party in interest, the supremacy clause of the federal Constitution commands the state to fund the entire program regardless of federal reimbursement. The incongruity of that position is apparent when its logical development is considered. The position is that even if the federal court upholds the DHHS construction of the federal statute, petitioner would still be required to implement the statute as we construed it. That would be true even though it is ultimately determined in federal court that our construction was erroneous. By the same logic, the Legislature would be required to appropriate money to fund benefits definitively determined to be in conflict with a federal statute. Neither the supremacy clause nor any other requires such a result. The fundamental flaw in real party in interest's logic is her failure to recognize that we are dealing with a federal matching fund law, in which the state statute is deliberately written to conform to the corresponding federal provisions, not to contradict them.

Presented with an apparent conflict between a federal categorical aid statute and a state law implementing that statute, Chief Justice Gibson explained that the public policy of this state is "to establish and to maintain conformity between the state law and the requirements of the federal act for the receipt of grants-in-aid in support of the state public assistance program." (*Pearson* v. *State Social Welfare Board* (1960) 54 Cal.2d 184, 189 [5 Cal.Rptr. 553, 353 P.2d 33].) To maintain such conformity, the Legislature could have initially appropriated money conditional on federal approval. Its decision, instead, to secure federal reimbursement prior to expending funds is entirely within the scope of its general authority. Enactment of a state budget is a legislative function, involving "interdependent political, social and economic judgments which cannot be left to individual officers acting in isolation; rather, it is, and indeed must be, the responsibility of the legislative body to weigh those needs and set priorities for the utilization of the limited revenues available." (*County of Butte* v. *Superior Court* (1985) 176 Cal.App.3d 693, 699 [222 Cal.Rptr. 429].)

B

Nor does section 11402.1 violate the separation of powers principle of the California Constitution (art. III, § 3). ■ Under that doctrine, the Legislature is forbidden to "readjudicate controversies that have been litigated in the courts and resolved by final judicial judgment. [Citations.]" (*Superior Court* v. *County of Mendocino* (1996) 13 Cal.4th 45, 53 [51 Cal.Rptr.2d 837, 913 P.2d 1046].) Nor may it enact statutes that " 'operate to set aside or annul judgments of courts in their nature final, and which would otherwise be conclusive on the rights of the parties.' " (*Mandel* v. *Myers* (1981) 29 Cal.3d 531, 548 [174 Cal.Rptr. 841, 629 P.2d 935].) ■ In this case, it has done neither. It has instead exercised its authority to " 'make a law to prospectively abrogate the effect of a judicial decision.' " (*Mendly* v. *County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1212 [28 Cal.Rptr.2d 822], quoting *Matter of Coburn* (1913) 165 Cal. 202, 210 [131 P. 352].)

By enacting section 11402.1, the Legislature did not comment on the correctness of *Land.* To the contrary, it specified that payments for those eligible under *Land* would commence, but only when federal reimbursement is secured. Section 11402.1 does not conflict with *Land,* but takes account of the reality that the DHHS disagrees with our interpretation. The Legislature appropriately adopted section 11402.1 to foster harmony between the state and federal system. (See *Pearson* v. *State Social Welfare Board, supra,* 54 Cal.2d 184, 214.)

■ "[T]he adoption of a budget is a legislative function, and . . . under the 'separation of powers' principle which is fundamental to our form of government a court is generally without power to interfere in the budgetary process." (*County of Butte* v. *Superior Court, supra,* 176 Cal.App.3d at p. 698.) ■ We see no reason why the Legislature cannot condition funding of a federally funded program on the assurance of federal funding. It has done no more than that.

The trial court's order does not and cannot authorize the expenditure of federal matching funds. The state voluntarily elected to participate in the AFDC program and neither the trial court's order nor our own obligates the state to unilaterally fund the AFDC-FC program. A federal court will soon determine whether federal participation is forthcoming. It is unconscionable and illegal to threaten petitioner's liberty for her acts in obedience of the intervening state statute. We annul the order of contempt.

III

The parties also dispute the effect of section 32.00 of the Budget Act of 1998. That section provides: "The officers of the various departments,

boards, commissions, and institutions, for whose benefit and support appropriations are made in this act, are expressly forbidden to make any expenditures in excess of these appropriations unless the consent of the Department of Finance is first obtained, and a certificate in writing is duly signed by the director of the department, seeking authority for the expenditure, certifying the unavoidable necessity of the expenditure. . . . Any member of a department, board, commission, or institution who shall vote for any expenditure, or create any indebtedness against the state in excess of the respective appropriations made by this act, unless the consent of the Department of Finance and the director's signature on the certificate, as required by this section, are first obtained, shall be liable both personally and on his or her official bond for the amount of the indebtedness, to be recovered in any court of competent jurisdiction by the person or persons, firm, or corporation to which the indebtedness is owing."

The Attorney General stresses that under this provision, petitioner may be held personally liable. Real party in interest maintains that a court order constitutes an "unavoidable necessity of the expenditure." That argument appears to have merit, but we need not resolve it in light of our conclusion that section 11402.1 renders petitioner unable to comply with the trial court's order. We note that the provision is not novel to the Budget Act of 1998, and hence not drawn specifically in response to our *Land* decision. (See, e.g., 1992 Budget Act, Stats. 1992, ch. 587, § 32.00, p. 2667; 1982 Budget Act, Stats. 1982, ch. 326, § 32.00, pp. 1423-1424.)

### DISPOSITION

The judgment of contempt is annulled. Each side to bear its own costs.

Vogel (C. S.), P. J., and Hastings, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 31, 1999.

APPENDIX

The draft All County Letter sent to DHHS is as follows:

"SUBJECT: CAPITOLA LAND, ET AL. V ANDERSON COURT CASE

"The purpose of this All County Letter (ACL) is to inform counties of a recent court decision, *Capitola Land, et. al* v. *Anderson,* that affects Aid to Families with Dependent Children Foster Care (AFDC-FC) eligibility for children living with relatives during the month the petition for removal was filed.

COURT ORDER

"*In Capitola Land,* the Court of Appeals invalidated Eligibility and Assistance Standards (EAS) Manual, Section 45-202.313 which delineates the federal requirement that a child must have lived with the parent or relative from whom removed in the petition month, or within six months prior to the petition for removal, and that the child must have received or have been eligible to receive AFDC in the home of that parent or relative during the month of petition. Instead, the court held that a child living with a relative and eligible for AFDC in the home of that relative in the month of the petition for removal would be eligible for Title IV-E foster care benefits, even if the child had not lived in the home of the parent or relative from whom removed in the six months prior to petition and removal, and regardless of whether AFDC linkage was established in the home of removal.

"In summary, this court case provides that where a child can not be linked to AFDC based on the home of legal removal [usually the parent(s)], the child may be linked for federal foster care purposes to a qualified relative's home if the child would have been eligible for AFDC in that [home].

"INSTRUCTIONS FOR ELIGIBILITY DETERMINATIONS

"*Existing Temporary Assistance for Needy Families (TANF) Cases*

"As you know, approximately 18,000 foster children currently receive Temporary Assistance for Needy Families (TANF) payments rather than AFDC-FC benefits. Each of these cases must be reexamined in order to determine if they are now eligible for federal AFDC-FC under the court's order. As each of these children comes up for a six-month periodic review with the court, the county must reexamine the child's eligibility for federal foster care benefits to comply with the court order.

"When reexamining the child's case, the county must determine whether the child was living with a qualified relative other than the parent or relative

from whom removed (i.e., the parent or relative cited in the court order) in the same month the petition to remove the child was filed. The child may have lived with this relative before or after the filing of the petition. If the child was living with a relative other than one cited in the court order under these circumstances, the county must determine whether that child would have been eligible for AFDC in that relative caretaker's home pursuant to the new linkage instructions contained in an ACL to be issued within the next 30 days. Most children will be eligible for benefits with a needy or non-needy caretaker relative unless the child has significant income and resources or some other factor would make him/her ineligible. If the child would have been eligible for AFDC in the home of the relative not cited in the court order, the AFDC linkage requirement is met and the child should now be eligible for AFDC-FC provided all other eligibility conditions are met. If the child did not live with a relative in any part of the month the petition was filed, the child will continue to receive TANF benefits.

*"Existing State AFDC-FC Cases*

"Counties must also reexamine each of their State foster care cases to determine if any children currently in receipt of State foster care benefits could be eligible for federal AFDC-FC pursuant to the *Capitola* decision. At redetermination, counties are to reexamine the initial linkage of each State AFDC-FC case. If a child who is currently receiving State foster care benefits lived with a relative at any time in the same month as the petition was filed, even if the relative's home was not cited in the court order, the child may be eligible for federal AFDC-FC if the child would have been eligible for AFDC in that relative's home. In such cases, a redetermination of linkage is to be completed and subsequent action taken as appropriate.

*"New Cases*

"If a child entering the foster care system is ineligible for federal AFDC-FC due to an initial eligibility determination pursuant to the afore-mentioned ACL based on the home of legal removal, the county may be required to complete a second eligibility determination if the child was living with a relative other than the parent or relative from whom the child was legally removed (i.e., the parent or relative cited in the court order). If the child was living with a relative not cited in the court order prior to the petition and/or was placed with the relative in the same month the petition was filed, the county must perform a second eligibility determination based on the child's eligibility for AFDC in that relative's home. Most children will be eligible for benefits with a needy or non-needy caretaker relative unless the child has significant income and resources or some other factor which would make him/her ineligible.

"It is imperative that the county first perform an eligibility determination based on the home of removal and link the child based on that home if at all possible. This will ensure that as many children as possible are linked pursuant to federal requirements as stated in our current State Plan.

"EFFECTIVE DATE

"All children who are determined to be eligible under the new rules stated by the court in *Capitola* shall be eligible as of October 29, 1997, and shall receive AFDC-FC benefits as of that date."