### STATE OF CALIFORNIA DEPARTMENT OF SOCIAL SERVICES, Plaintiff,

and

**Enedina Rosales, Intervenor–Appellant,**

v.

**Tommy G. THOMPSON, Secretary of the Department of Health and Human Services,\* Defendant–Appellee.**

No. 00–17266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2002.

Filed March 3, 2003.

---

43. *Early,* —— U.S. at ——, 123 S.Ct. at 366; *see also Woodford,* —— U.S. at ——, 123 S.Ct. at 361.

44. 28 U.S.C. § 2254(d)(1).

\* Tommy G. Thompson is substituted for his predecessor, Donna Shalala, as Secretary of the Department of Health and Human Services, Fed. R.App. P. 43(c)(2).

838

Marjorie Shelvy, Barbara Jones (argued), Yolanda C. Arias, Silvia Argueta, Erin Shaffer, Kimberly Lewis, Legal Aid Foundation of Los Angeles, Los Angeles, CA, for the intervenor-appellant.

Jeffrey Clair, Department of Justice, Civil Division, Washington, DC, for the defendant-appellee.

Rochelle Bobroff, AARP Foundation Litigation, Washington, DC, for the amicus curiae.

Before: THOMPSON, W. FLETCHER and BERZON, Circuit Judges.

BERZON, Circuit Judge.

"The practice of relatives or kin parenting children when their parents cannot is a time-honored tradition in most cultures." Kinship Care: A Natural Bridge: A Report of the Child Welfare League of America (1994). Increasingly, our own society has turned to relatives for assistance in providing foster homes to children in need of them.[1] The issue here is under what circumstances foster parents who are related to their foster children can receive funds under the Aid to Families with Dependent Children Foster Care Program ("AFDC–FC").

AFDC–FC is a federal program administered by the States with federal financial participation. The program helps defray the cost of caring for needy foster children and thereby serves as an incentive for both kin and non-kin individuals and families to take in these children. Broadly speaking, eligibility for AFDC–FC funds depends on whether a child was eligible for AFDC benefits prior to being placed in foster care.[2]

In *Miller v. Youakim*, 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979), the Supreme Court held that foster parents who were related to the foster children in their care were entitled to AFDC–FC benefits on the same basis as unrelated foster care providers. *Id.* at 145–46, 99 S.Ct. 957. We are now asked to determine the scope of this eligibility for AFDC–FC. Specifically, we confront here the question whether, as the Secretary of the Department of Health and Human Services ("Secretary") posits, a child can receive AFDC–FC benefits only if he was AFDC-eligible in the home from which he was removed, termed "the home of removal."

It is helpful at the outset to understand the "home of removal" concept central to the Secretary's position. The "home of removal," in the Secretary's lexicon and as we use the term in this opinion, is the child's "legal" home with his or her parents or legal guardians—that is, with the adults who have legal custody of the child.

---

1. A majority of foster children in the State of California are now "placed in the homes of relatives and extended family members." Barbara Needell et al., Report to the Legislature on the Kinship Guardianship Assistance Payment (Kin–Gap) Program (2002), at 7.

2. Congress repealed AFDC as a separate program in 1996 and replaced it with the Temporary Assistance to Needy Families ("TANF") program enacted as part of the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), Pub.L. No. 104–193 (Aug. 22, 1996), which went into effect on July 1, 1997. PRWORA, however, continues to link eligibility for AFDC–FC to the eligibility requirements for AFDC under the pre–1996 statute. *See* 42 U.S.C. § 672. It is for this reason that we continue to refer to AFDC eligibility.

Under the statute governing AFDC–FC, a child is considered to have been legally removed from such a home when removal occurs pursuant to either a judicial decree or a voluntary agreement. *See* 45 C.F.R. § 1356.21(k)(1). Once the child is so "removed" from this home, the home becomes the "home of removal." After this "legal" removal, a child is usually placed in foster care. Often, prior to legal removal a child will be physically removed from his or her parents' home and placed in the interim with a relative who provides daily care to the child.

The circumstances of the Intervenor–Appellant, Enedina Rosales, provide an example of these concepts: Ms. Rosales's grandson, Anthony, was placed informally in her custody prior to his official removal from his mother's home, because he was being abused in his mother's home. After the judicial decree issued legally removing Anthony from his mother's custody, Anthony remained with his grandmother, Ms. Rosales, and she became his official foster parent. In this scenario, the "home of removal" is Anthony's mother's home. It does not matter that Anthony had already been physically removed from his mother's home prior to the official removal by judicial decree. *See* 45 C.F.R. § 1356.21(k).

As can be seen in Anthony's situation, so-called AFDC-linkage, on which eligibility for AFDC–FC benefits depends, could be based either on the home of removal, Anthony's mother's home, or on his interim home with his related caregiver, his grandmother. Here, the distinction is crucial, because Anthony was not AFDC-eligible in his mother's home, but was eligible in his grandmother's home at the time the removal petition was filed. As will become clear, there are also other circumstances in which the distinction matters.

The Secretary maintains that under the statute, only AFDC-eligibility in the home of removal is pertinent. The district court deferred to the Secretary's interpretation of the applicable statute, 42 U.S.C. § 672,[3] and held that eligibility for AFDC–FC could be based only on AFDC eligibility in the home of removal. Ms. Rosales now appeals the district court's order denying her motion for summary judgment and granting the Secretary's motion to dismiss.

## I. Background

### A. Statutory Framework

The AFDC–FC program, part of Title IV–E of the Social Security Act, provides funds to assist with the cost of foster care for dependent children. *See* §§ 672, 674, 675(4)(A). The program provides "foster care maintenance payments" which "cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation." § 675(4)(A). Both the state and the federal government contribute funds to the program, which then are distributed by state agencies. *See* §§ 670–672, 674.

The federal government will not contribute funds unless a state has a plan in place that meets the requirements of the federal statute. § 671(a). Among other requirements, a state plan must provide measures to ensure adequate standards for foster care homes and child care institutions. § 671(a)(10). Each plan must assure that every child receiving foster care payments is given appropriate care and services. § 671(a)(16); *see also* §§ 675(1), 675(5). The plan must also provide for the facilitation of a child's return to his or her own home. § 671(a)(15). If a state plan com-

---

**3.** Unless otherwise stated, all further citations to statutes are to 42 U.S.C.

plies with the federal requirements, the Secretary must approve the state plan and provide the requisite federal financial contribution. *See* § 671(b).

The federal requirement at issue here is contained within § 672(a), which provides:

Each State with a plan approved under this part shall make foster care maintenance payments . . . under this part with respect to a child who would have met the requirements of [§ 606(a) or § 607] (as such sections were in effect on July 16, 1996) but for his removal from the home of a relative (specified in [§ 606(a)] (as so in effect)), if—

(1) the removal from the home occurred pursuant to a voluntary placement agreement entered into by the child's parent or legal guardian, or was the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child and (effective October 1, 1983) that reasonable efforts of the type described in [§ 671(a)(15)] for a child have been made;

(2) such child's placement and care are the responsibility of (A) the State agency administering the State plan approved under [§ 671], or (B) any other public agency with whom the State agency administering or supervising the administration of the State plan approved under [§ 671] has made an agreement which is still in effect;

(3) such child has been placed in a foster family home or child-care institution as a result of the voluntary placement agreement or judicial determination referred to in paragraph (1); and

(4) such child—

(A) would have received aid under the State plan approved under [§ 602] (as in effect on July 16, 1996) in or for the month in which such agreement was entered into or court proceedings leading to the removal of such child from the home were initiated, or

(B)(i) would have received such aid in or for such month if application had been made therefor, or (ii) had been living with a relative specified in [§ 606(a)] (as in effect on July 16, 1996) within six months prior to the month in which such agreement was entered into or such proceedings were initiated, and would have received such aid in or for such month if in such month he had been living with such a relative and application therefor had been made.

§ 672(a).

As of July 1996, § 606(a) set eligibility requirements for AFDC by defining a "dependent child" as:

a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home . . . or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school. . . .

§ 606(a) (1996). Former § 607 added to this definition needy children who met the age requirements of § 606(a) and who had "been deprived of parental support or care by reason of the unemployment" of the parent who was the principal earner in the family. § 607 (1996).

The problem underlying this lawsuit arises from the confluence of four circumstances:

First, all too often parents or legal guardians find themselves unable to care for their children, so the children are placed informally in the homes of relatives.

Second, the former AFDC program (like the present TANF program) provided that children living with specified relatives other than their parents or legal guardians could be AFDC-eligible. *See* § 606(a) (1996).[4] Because relatives other than parents have no obligation to support a child financially, children living with relatives other than their parents can be eligible for welfare benefits due to their own economic circumstances, rather than those of their caregivers. *See* 45 C.F.R. § 206.10(a)(1)(vii) (1996) (AFDC application need not include non-parents in assistance unit); *see also* Randi Mandelbaum, *Trying to Fit Square Pegs into Round Holes: The Need for a New Funding Scheme for Kinship Caregivers*, 23 Fordham Urb. L.J. 907, 914 (1995) (describing "child-only" AFDC benefits provided to children living with relatives).

Third, under the Supreme Court decision in *Miller v. Youakim*, states must permit relatives, including relatives who could apply for and receive AFDC or TANF benefits for a child in their care, to serve as foster parents for that child and to receive AFDC–FC if otherwise eligible. *See id.*, 440 U.S. at 146, 99 S.Ct. 957.

Finally, because of Congress's recognition that foster children have special needs, since 1968 the amount of money provided to foster children has been considerably more generous than that provided under AFDC or now TANF to children living with their own parents or informally with relatives. *See id.* at 143, 99 S.Ct. 957;

Pub.L. No. 90–248, § 205(b) (1968); *see also* Shelley Waters Boots & Rob Geen, *Family Care or Foster Care? How State Policies Affect Kinship Caregivers*, New Federalism: Issues and Options for the States, The Urban Institute, Series A, No. A–34, Tbl. 1, at 4 (July 1999) (AFDC benefit in 1996 for a single child in California was $293 compared to the $410 AFDC–FC benefit); Mandelbaum, *supra*, at 916 (nationwide, AFDC–FC benefits in 1995 were two to four times greater than AFDC benefits).

As a result of these four factors, a child can be AFDC-eligible while living with relatives who are later appointed by the state as that child's foster parents, and can, if qualified, receive AFDC–FC benefits considerably higher than the child would receive if he or she lived with the same relatives informally outside the foster care system. In dispute here is under what circumstances a child who is unofficially living with a relative at the time of removal from his or her legal home—the home of removal—and is AFDC-eligible in that relative's home, is eligible for the higher AFDC–FC benefits if that relative becomes the state-appointed foster parent for the child.

The Secretary maintains that such a child is not always eligible for AFDC–FC. According to the Secretary, under § 672(a), a child can only receive AFDC–FC benefits if he would have been AFDC-eligible in the home from which he was removed at the time the removal petition is filed or a voluntary placement agreement signed, and he was living in that home within six months of the filing of the petition.[5]

---

4. Although not all relatives fit into the fifteen specified relatives in § 606(a), for the purposes of this opinion, when we refer to relatives or to specified relatives we refer only to relatives who are listed in § 606(a).

5. For simplicity, we hereafter refer only to petitions for a judicial decree rather than voluntary agreements, recognizing that voluntary placement agreements with the child's parent or legal guardian that remove a child

Ms. Rosales maintains that the statute contains no such explicit restrictions and should not be interpreted to contain them. According to Ms. Rosales's construction of § 672(a), a child who is AFDC-eligible while living informally in a relative's home at the time the removal petition is filed can receive foster care benefits in that relative's home if the relative later becomes the child's foster parent.

## B. The *Land v. Anderson* Decision and its Aftermath

In May 1997, the California Court of Appeal considered whether a relative's home that is not the home of removal can be used to establish eligibility for AFDC–FC. *Land v. Anderson*, 55 Cal.App.4th 69, 63 Cal.Rptr.2d 717 (2 Dist.1997). Prior to *Land*, the California Department of Social Services ("DSS") interpreted § 672(a) as mandating AFDC–FC benefits for a child only if (1) the child was living in the home of removal at the time the petition was filed or within six months prior thereto; and (2) the child was AFDC-eligible in the home of removal. *See, e.g., Land*, 55 Cal.App.4th at 73, 63 Cal.Rptr.2d 717.[6] The state plan so provided, the Secretary approved that plan, and California distributed AFDC–FC funds accordingly.

The *Land* court held that the DSS regulations implementing the state plan and, consequently, the State's AFDC–FC program were contrary to the plain meaning of § 672(a). The court read the statute as allowing AFDC linkage if a child was living with a relative other than the relative from whom the child was removed, as long as the child was eligible for AFDC in the home of the relative with whom he was living in the month the petition for removal was filed. *See Land*, 55 Cal.App.4th at 83, 63 Cal.Rptr.2d 717. The court therefore concluded that California's requirement that the child have been AFDC-eligible in the home from which the child was removed was in violation of § 672(a). *Land*, 55 Cal.App.4th at 77–84, 63 Cal.Rptr.2d 717.

In response to the *Land* decision, DSS proposed state plan amendments. Specifically, DSS proposed that any child living with a relative caregiver in the month the removal petition was filed (or within six months prior to that date) could qualify for AFDC–FC if the child was eligible for AFDC in either a relative's or a parent's home during that time. *See* California Dept. Social Servs. Manual of Policies and Procedures, Manual Letter No. EAS 99–04, § 45–202.332, at 552 (effective May 3, 1999);[7] DSS All–County Letter No. 97, Dec. 23, 1997.

---

from a relative's home are treated identically under § 672 to petitions for a judicial decree.

6. The pertinent California regulation read:
 [The] linkage requirement is met if one of the following conditions exists during the month in which the petition was filed: The child was living in the home of the parent or relative from whom removed, was eligible for, and received federal AFDC–FG/U [California's term for AFDC–FC program]. The child was living in the home of the parent or relative from whom removed and would have been eligible for federal AFDC–FG/U had application been made. The child was no longer living in the home of the parent or relative from whom removed,

but would have been eligible ... based on that parent's or relative's home had he/she been living there and had application been made. (a) To meet this condition, the child shall have been living with the parent or relative from whom removed, within any of the six months prior to the month in which the petition was filed ... which led to the child's placement in foster care. ...

Cal. Dep't. of Soc. Servs. Manual of Policies & Procedures, Manual Letter No. EAS–91–14, Reg. No. 45–202, § .3 (effective Oct. 1, 1991), at 643, *quoted in Land*, 55 Cal.App.4th at 78, 63 Cal.Rptr.2d 717.

7. Section 45–202.332 provides:

The Secretary rejected the proposed state plan amendment, explaining in a letter to DSS that the proposed amendment was not in compliance with the federal statute and "longstanding policy of HHS," which require that:

> at the time of the removal petition, the AFDC-eligible child: (1) was living in the home of the parent or relative from whom the child was removed; or, (2) had been living with *that* parent or relative within the six months prior to the filing of the removal petition. A child who is living with another relative, whether or not receiving AFDC, is not a title IV–E foster care eligible-provider if proceedings to remove the child from the parent are initiated more than six months after the date when the child is no longer living with the parent.

HHS Letter to DSS, April 3, 1998. (Emphasis added.)

DSS filed a petition for review of the Secretary's rejection directly in this court, but the appeal was dismissed for lack of jurisdiction. *See California v. Shalala,* 166 F.3d 1019 (9th Cir.1999). We stated, however, that a district court would have jurisdiction to review the agency's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. *See id.* at 1020.

Meanwhile in August 1997, Linda Allen, a foster care provider, filed a petition in state court seeking a writ of mandate requiring California to provide AFDC–FC benefits to her related foster children pursuant to *Land.* DSS filed a cross-petition and cross-complaint against the Secretary seeking to secure matching funds for any payments that might be ordered by the court. After the Secretary removed the case to federal court, the district court granted the Secretary's motion to dismiss the case. *See Allen v. Anderson,* No. 98–2128 (C.D.Cal., May 1, 1998).

While *Allen* was pending, the California legislature enacted Cal. Welf. and Insts. Code § 11402.1, which prohibits DSS from paying any state funds for additional children made eligible for AFDC–FC by *Land* and the resulting state plan amendment "until and unless federal financial participation is obtained." Cal. Welf. & Insts. Code § 11402.1.[8] DSS appealed *Allen* to this court, but we dismissed the appeal as moot in light of the August 1998 enactment of § 11402.1. *See Allen v. Anderson,* No. 99–55127 (9th Cir. Oct.13, 1999).

[T]he linkage requirement is met if the following applies:
(a) The county has information that the child resided with any [specified] relative ... during the petition month or within any of the six months prior to the month in which the petition was filed or the voluntary placement agreement was signed, and can establish that the child would have been eligible for AFDC–FG/U, based on that home, had application been made while the child was living there.

8. Cal. Welf. and Insts. Code § 11402.1 provides:
"Eligible for federal financial participation" means that the payment is consistent with an approved state plan under [42 U.S.C. § 671 et seq.], authorizing federal financial participation in the payment. Notwithstanding any other provision of law, until and unless federal financial participation is obtained, no payment of AFDC–FC benefits may be made from either state or county funds on behalf of a child determined to be eligible for AFDC–FC solely as a result of the decision of the California Court of Appeal in Land v. Anderson....
Cal. Welf. & Insts. Code § 11402.1.
The legislative findings attached to § 11402.1 indicate that "[i]t is the intent of the Legislature that the department continue to pursue federal financial participation for these payments and that when full federal financial participation is obtained, implementation of the payments for children will commence." Cal. Welfare & Insts. Code § 11402.1, Historical & Statutory Notes.

## C. Procedural History

In 1999, DSS sought district court review under the APA, 5 U.S.C. § 702, of the Secretary's determination that the state plan amendment did not comply with the requirements of § 672. Ms. Rosales, a court-appointed foster parent for her grandson, moved to intervene.

DSS had removed Ms. Rosales's grandson, Anthony, from the custody of his mother when he was five months old, because of physical abuse. Anthony would not have been eligible at that time for AFDC benefits in his mother's home (the home of removal) because as the Secretary explains, "the family from which the child was removed—headed by the child's mother—did not meet the income and resources limitations of the AFDC program and therefore was not financially eligible for AFDC benefits."

Los Angeles County welfare officials physically removed Anthony from his mother's home and asked Ms. Rosales to take him into her home. Ms. Rosales subsequently became Anthony's court-appointed foster parent in August 1997, after Anthony was officially removed from his mother's custody. Because of Anthony's special needs and repeated hospitalizations, Ms. Rosales took leaves of absence from her job to care for him and was ultimately fired. She then applied for welfare benefits for herself and Anthony. Ms. Rosales currently receives TANF benefits for Anthony and works part-time, but has difficulty providing for Anthony's needs without AFDC–FC benefits.

Anthony qualified for AFDC in his grandmother's home at the time the removal petition was filed. DSS initially denied AFDC–FC benefits to Anthony because he was not AFDC-eligible in his mother's home in the month the removal petition was filed, as required by the state plan invalidated in *Land.* In November 1998, after the *Land* decision, DSS issued an administrative hearing decision in Ms. Rosales's favor, overturning its previous denial of benefits. In January 1999, however, DSS informed Ms. Rosales that she would not receive any benefits on Anthony's behalf because of the new state law, Cal. Welf. and Insts. Code § 11402.1.

Neither the Secretary nor the State of California opposed Ms. Rosales's motion to intervene. The court ordered intervention. Ms. Rosales did not file a separate pleading. Instead, in her motion to intervene, she simply joined in DSS's "contention that California is entitled to federal financial participation in AFDC–FC benefits paid pursuant to *Land.*"

The Secretary filed a motion to dismiss the action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). All the parties then stipulated to stay this action pending the outcome of the *Allen* appeal. After we dismissed *Allen* as moot, DSS successfully moved to have the district court opinion in *Allen* vacated. *California v. Shalala,* 115 F.Supp.2d 1191, 1194 (E.D.Cal.2000)[hereinafter *"California"*]. The parties in this action then requested that the stay be lifted, and Ms. Rosales filed a motion for summary judgment, in which DSS joined.

The district court granted the Secretary's motion to dismiss and denied Ms. Rosales's summary judgment motion. Deferring under *Chevron v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to the Secretary's interpretation of the requirements laid out by § 672(a), the district court upheld the Secretary's rejection of the state plan amendment. *California,* 115 F.Supp.2d at 1194–95.

After first holding that the statute was not clear and unambiguous, the district court turned to the second prong of *Chev-*

*ron* analysis and concluded that the Secretary's interpretation was a permissible one. *Id.* at 1195–96. The district court characterized the Secretary's interpretation as "granting AFDC benefits to a child 'who would meet all the requirements of [the AFDC program] *[in his home of removal]* but for his removal,' if any of the three requirements outlined in Section 672(a)(4) are [sic] met." (Italicized phrase added by district court). The court thought it "reasonable to conclude that the necessary AFDC eligibility be established in the home of removal, under each of the three ways." *Id.* The district court therefore upheld the Secretary's interpretation, citing *Chevron* once more. *See id.*

California did not appeal the district court decision, but Ms. Rosales filed a timely appeal in this court.

## II. Analysis

The facts here are undisputed by the parties, so we must determine whether Ms. Rosales or the Secretary was entitled to prevail as a matter of law. *See Vierra v. Rubin,* 915 F.2d 1372, 1376 (9th Cir. 1990).

### A. Jurisdiction

#### 1. *Mootness and Standing*

■ As an initial matter, the Secretary maintains that there is no live controversy because California has chosen not to appeal the district court's decision. In fact, the controversy over the state's AFDC–FC plan is quite live: The California appellate decision, *Land,* holding that California's policy of not extending benefits based on AFDC-linkage to the homes of relatives runs afoul of the federal statute, remains good law; the proposed state plan—amended to meet the requirements of *Land*—has not been withdrawn; and there is a legislative directive that DSS pursue approval of the proposed state plan. Additionally, as we discuss later, the outcome of this suit is of critical importance to Ms. Rosales, as approval of her interpretation of the statute would lead to her receiving AFDC–FC benefits on behalf of her grandson.

■ Also, while it appears that Ms. Rosales could have filed an independent lawsuit challenging the Secretary's interpretation of § 672, *see* 5 U.S.C. § 702, this suit can continue even if Ms. Rosales could not have brought an independent lawsuit. Intervenors in suits with a governmental party can often continue an appeal after the governmental party has declined to do so, even if they would not have been proper parties at the outset. *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1398 (9th Cir.1995) (allowing intervening environmental groups to appeal judgment setting aside endangered species listing even though Fish and Wildlife Service did not pursue appeal); *Didrickson v. U.S. Dep't of Interior,* 982 F.2d 1332, 1338 (9th Cir. 1992) (allowing Friends of the Sea Otter to appeal invalidation of federal regulations, despite government's decision to forego appeal); *Yniguez v. Arizona,* 939 F.2d 727, 732–34 (9th Cir.1991) (allowing intervenor to appeal where state declined to appeal after losing in district court); *National Wildlife Fed'n v. Lujan,* 928 F.2d 453, 456 n. 2 (D.C.Cir.1991).

In each of these cases the intervenor-appellant was allied with the original defendant, not the plaintiff. We see no analytical difference, however, when the intervenor-appellant is a *plaintiff*-intervenor. In the cited cases the defendant-intervenors could not properly have been sued as defendants, yet they were allowed to appeal district court decisions. We see no reason why a plaintiff-intervenor who could not have brought suit originally cannot remain in an extant lawsuit as the sole

appellant, provided that she meets the Article III standing requirements.[9] *See Didrickson,* 982 F.2d at 1338 ("Generally, an intervenor may appeal from any order adversely affecting the interests that served as the basis for intervention, provided that the requirements of Article III are satisfied."); *see also Diamond v. Charles,* 476 U.S. 54, 68, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986).

■ To have standing, Ms. Rosales must demonstrate that (1) she has suffered an "injury in fact;" (2) there is a causal connection between the injury and the alleged misconduct—the injury must be "fairly ... trace[able] to the challenged action of the defendant;" and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Alameda Newspapers, Inc. v. City of Oakland,* 95 F.3d 1406, 1412 (9th Cir. 1996) (intervenor can demonstrate standing on appeal "by alleging a threat of particularized injury from the order [she] seek[s] to reverse that would be avoided or redressed if [her] appeal succeeds"); *Beno v. Shalala,* 30 F.3d 1057 (9th Cir.1994).

Ms. Rosales has alleged a "particularized" and "actual" injury—the denial of AFDC–FC benefits for her foster child. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. It is undisputed that Anthony would have been AFDC-eligible in Ms. Rosales's home during the petition month. If we decide that the state plan amendments are indeed consistent with federal law, then Anthony would be eligible for the higher maintenance amounts due under AFDC–FC.

That some additional steps by the State may be required to provide Ms. Rosales's benefits is of no moment. The State is likely to take those steps: California can only continue to receive federal participation in its AFDC–FC program if its state plan conforms to the proper interpretation of the federal statute. *See* § 671. California's economic interests and the legislative intent expressed in Cal. Welf. and Insts. Code § 11402.1 indicate that California intends to secure that federal financial assistance. It therefore seems likely that a decision by this court that a child must be eligible for AFDC–FC if AFDC-eligible in the home of any specified relative would redress Ms. Rosales's injury. Such a showing is sufficient, as Ms. Rosales need only show that it is *likely* that our decision will redress her injury, not that it will do so. *See Lujan,* 504 U.S. at 568, 112 S.Ct. 2130; *see also Beno,* 30 F.3d at 1064(showing "that a favorable decision *might* not redress plaintiff's injury" does not defeat standing).

The Secretary maintains that regardless of the outcome of Ms. Rosales's appeal, the state is bound by res judicata principles to the district court judgment, so Ms. Rosales's appeal cannot redress her injuries. It is true that res judicata principles would, at present, prevent the State itself from pursuing a second action against the Secretary. *See* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4433 (1986, 2002 supplement) (describing the settled principle that "the bare act of taking an appeal" does not defeat the res judicata effect of a federal district court decision); *see also Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988). As this is an appeal in the same case, howev-

---

9. Ms. Rosales did not need to meet Article III standing requirements to intervene. *See* Fed. R.Civ.P. 24(a); *Southwest Ctr. for Biological*

*Diversity v. Berg,* 268 F.3d 810, 817 (9th Cir. 2001).

er, the doctrine of res judicata simply has no applicability.[10]

█ To the extent the Secretary may be suggesting that he will not be bound by any decision reversing the judgment below, he is incorrect. Once a decision of the district court is reversed, the "judgment cannot serve as the basis for a disposition on the grounds of res judicata or collateral estoppel." *Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir.1980) (citations omitted); *cf. Jones v. Bates*, 127 F.3d 839, 851 n. 12 (9th Cir.1997). Thus, if the judgment of the district court is reversed, the Secretary would be bound by our decision for all purposes.

### 2. *Preservation of Issues on Appeal*

█ The Secretary also contends that Ms. Rosales failed to preserve her right to continue this case on appeal because she did not file a separate complaint. Contrary to the Secretary's view, no separate pleading was required, as both Ms. Rosales and the state sought the same result, a judicial determination that AFDC–FC benefits are available for all children who are AFDC-eligible in a relative's home on the date of removal. *See Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir.1992) (allowing intervenors to proceed without filing separate pleadings where it was clear from the motion to intervene

what result intervenors sought); *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 376–77 (4th Cir.1980) (allowing intervention absent pleading where sufficient notice of intervenor's position was given); *see also* 7C Wright, Miller & Kane, § 1914 ("If the intervenor is content to stand on the pleading an existing party has filed, it is difficult to see what is accomplished by adding to the papers in the case a new pleading that is identical *in its allegations* with one that is already in the file." (emphasis added)).

### B. Level of Deference

█ *Chevron* requires reviewing courts to apply a two-step framework to questions of statutory construction. First, we inquire "whether Congress has directly spoken to the precise question at issue," in which case we "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. If the "statute is silent or ambiguous with respect to the specific issue," we move to the second step and must defer to the agency's interpretation if it is "based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

The question whether *Chevron's* strong form of deference applies in this case is not an easy one. Neither the regulation upon which the Secretary relies[11] nor the

10. For that reason, *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) is not on point. In *Moitie*, there were several separate, parallel lawsuits, not a single suit with an identity of claims, issues, and relief sought. Moitie did not appeal an adverse ruling, although the plaintiffs in the other suits did, successfully. The Court held that Moitie was bound by the separate, unappealed judgment against him and could not relitigate the same issue in a second case. *Id.* at 398–99, 101 S.Ct. 2424.

11. The regulation most nearly on point, added in 2000, provides:

(*l*) *Living with a specified relative.* For purposes of meeting the requirements for living with a specified relative prior to removal from the home under [§ 672(a)(1)] and all of the conditions under [§ 672(a)(4)], one of the two following situations must apply:
(1) The child was living with the parent or specified relative, and was AFDC eligible in that home in the month of the voluntary placement agreement or initiation of court proceedings; or
(2) The child had been living with the parent or specified relative within six months of the month of the voluntary

decision letter rejecting California's state plan [12] directly address the issue now before us. After *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) and *Barnhart v. Walton*, 535 U.S. 212, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) (both decided after the district court decision), determining when an agency interpretation that is not embodied explicitly in a congressionally-authorized regulation subjected to notice and comment rulemaking deserves *Chevron* deference has become a complex task. Analyses by scholars and jurists alike have emphasized that these two cases have further obscured the already murky administrative law surrounding *Chevron*. *See Mead*, 533 U.S. at 245, 121 S.Ct. 2164 (Scalia, J., dissenting) (terming the majority opinion in *Mead* "confusing," full of "utter flabbiness," and "virtually open-ended"); Richard J. Pierce, Jr., *Administrative Law Treatise* § 3.5, at 5, 10(4th ed. 2003 Supp.) (calling recent Supreme Court decisions on *Chevron* "confusing," "muddled," and "leav[ing] many questions unanswered"); Robert A. Anthony, *Keeping Chevron Pure*, 5 Green Bag 2d. 371 (2002) (". . . *Barnhart v. Walton* could sow the seeds of grievous confusion in the law of *Chevron* deference. . . .").

Because we ultimately find that the Secretary's interpretation cannot withstand scrutiny under even the high level of deference afforded by *Chevron*, we need not wade further into the *Mead/Barnhart* quagmire. Instead, we assume, without deciding, that the Secretary's interpretation deserves *Chevron* deference.

## C. Merits

■ We come, finally, to the merits of this intricate question of statutory construction. Looking closely at the language and structure of § 672(a) in light of the statute as a whole, we conclude that § 672(a) cannot reasonably be interpreted as precluding AFDC–FC payments to children who *are* AFDC-eligible in *any* relative's home at the time a petition removing them from an abusive or neglectful home is filed.[13] Understanding why this is so requires careful study of the statute, of *Miller*, and of the Secretary's various explanations for his "home of removal" requirement. We proceed sequentially through § 672:

### 1. *The Statutory Preamble*

The Secretary and the district court primarily locate the "home of removal" requirement in the very first part of the statute. That provision reads:

> Each State with a plan approved under this part shall make foster care payments . . . under this part with respect to a child who would have met the requirements of [§ 606(a) or § 607] (as such sections were in effect on July 16, 1996) but for his removal from the home of a relative. . . .

§ 672. Needy children meet the requirements of former §§ 606(a) and 607 if they

---

placement agreement or the initiation of court proceedings, and the child would have been AFDC eligible in that month if s/he had still been living in that home. 45 C.F.R. § 1356.21(*l*). Nothing in the text of this regulation, or any other to which we have been directed, specifies that the child must have been AFDC-eligible in the *same home* from which he was removed.

12. The letter does not explicitly state a home of removal AFDC-eligibility requirement. Instead, it focuses on the requirement that a child have *lived* in the home of removal in the six months prior to the filing of the removal petition.

13. For present purposes, the distinction between the petition date and the date of final removal is of no moment, so we use the two dates interchangeably.

are (1) deprived of parental care because one of their parents is absent from their home or physically or mentally incapacitated or the principal earner is unemployed; (2) under 18 (or, at the option of the State, under nineteen and in school); and (3) living with one of fifteen varieties of specified relatives "in a place of residence maintained by one or more such relatives as his or their own home." *See* §§ 606 and 607 (1996).

There is no "home of removal" AFDC-eligibility requirement contained explicitly in the preamble, nor is there any other evidence that Congress directly addressed such a requirement. Therefore, in evaluating the Secretary's interpretation of the statute, we must turn to the second step in the *Chevron* test, and examine whether the Secretary's interpretation is a permissible one. The Secretary relies primarily upon the "but for" clause of the preamble language as the implicit source of the "home of removal" linkage requirement. The preamble, the Secretary maintains, modifies the remainder of the statute and requires that the child must have lost AFDC eligibility *as a result* of his or her removal from the home of his parent or legal guardian.

There are at least two insuperable difficulties with the Secretary's reading of the statute:

First, as the district court opinion vividly demonstrates, one can read the statute in this manner only by adding language that is not there. The district court summarized the Secretary's position thus:

In essence, the Secretary reads section 672(a) as granting AFDC–FC benefits to a child "who would meet the requirements of [the AFDC program] *[in his home of removal]* but for his removal," if any of the three requirements outlined in section 672(a)(4) are [sic] met.

(Italicized phrase added by the district court). The problem with this reading is that it depends on adding a phrase, "in his home of removal," which does not appear in the statute. That the Secretary's reading of § 672(a) requires the addition of absent verbiage when the existing language is perfectly coherent without it strongly suggests that the extra phrase is *not* what Congress intended.

Second, and most critically, central to the Secretary's reading of the "but for his removal from the home of a relative" language of the preamble is the understanding that the removal from the home must have *caused* ineligibility for ordinary AFDC payments. To so read the "but for" phrase, however, cannot be squared with the Supreme Court's decision in *Miller.*

Were the Secretary construing the preamble to § 672(a) in a vacuum, his interpretation might well be reasonable. Reading the provision without regard to the rest of the statute, one might reasonably construe the "but for" phrase as stating that § 672 provides foster care payments only for children who otherwise meet the requirements of the section but who *lose* eligibility for ordinary AFDC payments *because* of their removal from their homes. So read, children living in relatives' homes would not meet that criteria, because they *are* eligible for AFDC payments while living with related foster parents.

The Secretary's causation-based limitation on AFDC–FC payments, however, simply cannot be reconciled with *Miller* and the Secretary's policy approved of in *Miller.* In *Miller,* the Supreme Court addressed "whether Illinois[had] correctly interpreted the federal standards for AFDC–FC eligibility set forth in ... the Act to exclude children who, because of placement with related rather than unre-

lated foster parents, qualify for assistance under the basic AFDC program." 440 U.S. at 129, 99 S.Ct. 957.[14] The Court rejected Illinois's assertion that "Congress enacted the Foster Care program solely for the benefit of children not otherwise eligible for categorical assistance," *id.* at 134, 99 S.Ct. 957, and determined instead that "the Foster Care program was designed to meet the particular needs of all eligible neglected children, whether they lived with related or unrelated foster parents." *Id.* The Court therefore held that children are eligible for AFDC–FC payments while living with related foster parents with whom they are also eligible for ordinary AFDC benefits.

In so holding, the Court noted that the Social Security Act as a whole has from its start encompassed a "preference for care of dependent children by relatives." *Id.* at 142, 99 S.Ct. 957.[15] *Miller* also recognized that Congress increased the amount of

AFDC–FC maintenance payments in 1968 to make them more than ordinary AFDC payments because of the "special needs of neglected children." *Id.* at 143, 99 S.Ct. 957. Further, the Court could perceive in the history of the 1968 amendment "no basis for distinguishing between related and unrelated foster homes" with respect to the amount of benefits received.[16] *Id.* The Court concluded in *Miller* that:

> The need for additional AFDC–FC resources—both monetary and service related—to provide a proper remedial environment for ... foster children raised from the status of the child as a subject of prior neglect, not from the status of the foster children. Appellants attribute to Congress an intent to differentiate among children who are equally neglected and abused, based on a living arrangement bearing no relationship to the special needs that the AFDC–FC program was created to meet. Absent

14. The statute construed in *Miller* was former § 608 (§ 408 of the Social Security Act). *See* § 608 (1978). The statute has been renamed and amended in some respects. In particular, the Adoption Assistance and Child Welfare Act of 1980 added the provision for removal through voluntary agreement and, in the process, changed "except for" to "but for" in the preamble. *See* Pub.L. No. 96–272, § 472, codified as 42 U.S.C. § 672, (1980). The legislative history demonstrates that Congress was aware of *Miller* and supported the holding of that case by increasing the funds available under AFDC–FC to account for the children added to the program by *Miller. See* Pub.L. No. 96–272, § 474(b)(4)(C), codified as 42 U.S.C. § 674 (1980); 125 Cong. Rec. 29495, 29538 (Oct. 25, 1979) (Statement of Senator Cranston). Another significant change occurred in the 1996 Act. These amendments accounted for the change to TANF, by putting in hypothetical rather than direct references to AFDC eligibility in the preamble and in subsection (4).

Further evidence that the meaning of the statute has not been materially altered since *Miller* comes in the form of the Secretary's own policy statements. The Secretary confirms that he presently follows the policy approved in *Miller* of extending AFDC–FC benefits to related foster parents. *See* Government Brief at 35 ("[T]he federal government, rather than discriminating against related caregivers, has a longstanding position that related caregivers are entitled to foster care assistance with respect to an otherwise eligible child, even in instances where the related caregiver could also qualify for AFDC benefits with respect to the same child. *See Miller*, 440 U.S. at 143–44, 99 S.Ct. 957."). Any difference between the statutory language construed in *Miller* and the present language is therefore of no consequence with regard to the impact of the *Miller* rule on the Secretary's construction of the statute.

15. The current statute, in fact, permits states to give preference to relatives as foster parents. *See* § 671(19).

16. Although *Miller* refers to the 1967 Amendments to the Social Security Act, *see id.,* 440 U.S. at 142, 99 S.Ct. 957, those amendments were not finally enacted until 1968. *See* Pub.L. No. 90–248 (1968).

clear support in the statutory language or legislative history, we decline to make such an unreasonable attribution.

*Id.* at 145, 99 S.Ct. 957.

After *Miller,* the "but for" phrase cannot reasonably mean that the only children eligible for AFDC–FC are those who lose their AFDC eligibility *because* they are removed from their parents' homes and placed in foster care. *Miller* holds that a child can be eligible for AFDC–FC in the home of a relative caregiver designated as his or her foster parent. As *Miller* recognizes, such a child can also be eligible for AFDC benefits in that same relative foster parent's home. In such a situation, the removal from the parents' home and placement in foster care does not cause a loss of AFDC-eligibility. The phrase "but for" therefore cannot indicate causation. Otherwise, foster children placed with related foster parents would never be eligible for the very foster care benefits *Miller* approved.

The Secretary is bound by the Supreme Court's interpretation of the statute. *See Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 131, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990) ("Once [the Supreme Court has] determined a statute's clear meaning, we must adhere to that determination under the doctrine of *stare decisis,* and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning."). Furthermore, the Secretary adopted the policy stated in *Miller,* even before that decision, *see Miller,* 440 U.S. at 133, 99 S.Ct. 957, and continues to apply it. *See* Government Brief at 35.

■ There is an alternative, perfectly plausible interpretation of the "but for" phrase that is consistent with the policy approved in *Miller.* Under that interpretation, the introductory part of § 672(a) provides that a child can be AFDC–FC eligible as long as he would have met the requirements of §§ 606(a) or 607 *even if* removal proceedings had never been instituted. A child, like Anthony, who is living with a relative and was AFDC-eligible in that home when the judicial decree issued removing him from his mother's home and placing him in foster care, meets this requirement.

Support for this interpretation can be found in § 670, the congressional declaration of purpose. Section 670 states that Title IV–E, which provides for federal payments for foster care and adoption assistance, was passed "[f]or the purpose of enabling each State to provide ... foster care ... for children who *otherwise would have been eligible* for assistance under the State's plan approved under part A [§§ 601 et seq.] (as such plan was in effect on June 1, 1995)." § 670(emphasis added). Allowing children like Anthony to receive AFDC–FC benefits conforms with the congressional purpose of providing foster care assistance to children who *"otherwise would have been eligible"* (emphasis added) for AFDC. Had Anthony not been placed in foster care, he would have been eligible for AFDC benefits, because he was living with his grandmother, a specified relative for AFDC purposes. Nowhere in the statement of congressional purpose is there an AFDC linkage requirement to the home of removal, as opposed to *some* pre-foster care linkage to AFDC.[17]

---

17. We note, in addition, former §§ 606 and 607 establish a "depriv[ation] of parental support or care" as an AFDC-eligibility requirement, indicating a required linkage to the parents' home. A child living in the home of a relative other than the parent who receives AFDC must still meet the deprivation of parental support requirement. *See* §§ 606, 607 (1996). So there will, under the *Land* interpretation, always be AFDC-linkage to the par-

■ The foregoing interpretation is consistent with the statutory construction adopted both by *Land* and by California in its proposed state plan amendment. This reading of the preamble does require that the child be AFDC-eligible at the time of removal. It permits eligibility to be based, however, on a relative's home other than the home from which the child was removed. Under this construction, a child who becomes AFDC-eligible only *because of* placement in foster care,[18] but who was not eligible before that placement, is not eligible for AFDC–FC.

The Secretary characterizes this interpretation as turning only on the child's circumstances while in foster care. That characterization is incorrect. Our reading of the statute limits AFDC–FC payments to children who were needy, and AFDC-eligible, before they were placed in foster care. The interpretation thus gives meaning to the preamble without creating the clash with *Miller* created by the Secretary's contrary understanding.

2. *Subsections (1) through (4): The Special AFDC–FC Requirements*

Nothing in the first three of the specific AFDC–FC eligibility requirements spelled out in § 672(a) encompass the Secretary's home of removal requirement. The Secretary does not contend otherwise.

Subsection (4) directly addresses prior AFDC eligibility. Because Congress "has directly spoken" on the issue, the Secretary's interpretation of this portion of the statute must stand or fall at the first step of *Chevron.*

■ *Land* principally relied upon subsection (4) for its conclusion that an AFDC–FC eligible child need only have been AFDC-eligible in the home of the relative with whom he was living at the time of removal. We agree with the court in *Land* that the plain language of subsection (4) permits no construction other than the one the *Land* court adopted.

Now that TANF has replaced AFDC, subsections (A) and (B)(i) are redundant. Both are hypothetical, as AFDC no longer exists.[19] We therefore discuss the two subsections together.

Under both subsections 4(A) and 4(B)(i), the operative question in determining eligibility for AFDC–FC is whether the child "would have received aid under the State plan approved under [§ 602] (as in effect on July 16, 1996) in or for the month in which ... court proceedings leading to the removal of such child from the home were initiated." § 672(a)(4)(A). *Miller* understood this requirement as stating that "the child must have been eligible for categori-

ent's home in that sense, the only sense the § 672 preamble requires.

18. This situation could occur if a child were placed in foster care with a relative but had not been living with this relative prior to foster care placement.

19. The Social Security Amendments of 1967, enacted in 1968, added subsection (B) in order to expand the number of children covered under the AFDC–FC program to children who would have received benefits had their parent or the relative with whom they lived applied for AFDC. *See* Pub.L. No. 90–248 (1968); H.R. Rep. 90–544, *reprinted in* House Misc.

Reports on Public Bills, 17 (1967); S.Rep. No. 90–744, *reprinted in* 1967 U.S.C.C.A.N. 2834, 2864; *see also Miller*, 440 U.S. at 129 n. 1, 99 S.Ct. 957 (quoting then § 408(a)(4), in which (A) referred to a child who "received aid ... in or for the month in which court proceedings were initiated," and (B)(i) referred to a child "who would have received such aid ... if application had been made."). The distinction in the earlier versions of the statute between children actually receiving AFDC benefits in the month the petition for removal is filed and those eligible to receive such benefits had application been made is now irrelevant.

cal assistance under the State's plan prior to initiation of the removal proceedings." *Id.* at 134, 99 S.Ct. 957. That is all. And, indeed, nothing more appears in the language Congress chose. Thus, as *Land* held, the plain words of subsections 4(A) and (B)(i) "require only that the child be receiving or be eligible to receive AFDC payments when the petition for removal is filed .... [a]s AFDC can be obtained through a relative other than the one from whom removal is sought...." *Land,* 55 Cal.App.4th at 83, 63 Cal.Rptr.2d 717.

The Secretary provides no direct refutation to this plain language understanding of subsections (4)(A) and (B)(i). Rather, the Secretary reads into the language of these subsections a limitation that the child must be eligible for AFDC benefits when the petition is filed *in the home from which he or she is removed,* rather than in the home of some other relative. For this addition to the statute's clear language the Secretary relies on (1) his understanding of the introductory "but for" phrase, which we have already concluded is not viable after *Miller;* (2) the legislative history of the statute; and (3) § 672(a)(4)(B)(ii), which he construes as specifying the only circumstances in which a child living at the time of the removal petition with a relative other than the one from whom he is removed can be AFDC-eligible. The latter two justifications for reading a limitation into the plain language of §§ 672(a)(4)(A) and (B)(i) are no more persuasive than the first.

#### (a) *Legislative History:*

 Where, as here, the statutory language is plain, there is ordinarily no reason to resort to legislative history to illuminate that language. *United States v. Boren,* 278 F.3d 911, 914–15 (9th Cir.2002). Courts look at legislative history where the plain language is unambiguous only if "the

legislative history clearly indicates that Congress meant something other than what it said." *Carson Harbor Vill. Ltd. v. Unocal Corp.,* 270 F.3d 863, 877 (9th Cir. 2001) (quoting *Perlman v. Catapult Entm't, Inc.,* 165 F.3d 747, 753 (9th Cir. 1999)).

Considering the legislative history, we conclude that there is certainly no such clear indication. To the contrary, the history supports our determination that Congress did mean only what it said in subsections (A) and (B)(i)—namely, that the child must be AFDC-eligible *when* the petition for removal is filed.

The current AFDC–FC program began in 1961 as a modest program designed to encourage state officials to remove AFDC-eligible children from abusive and neglectful homes by assuring that the children's AFDC eligibility would continue after removal. *See* Pub.L. No. 87–31, § 2 (1961) (temporary statute); Pub.L. No. 87–543, § 131(b)(1962) (permanent statute); S.Rep. No. 87–165, *reprinted in* 1961 U.S.C.C.A.N. 1716, 1721. At the time, the amount of federal financial assistance provided to foster children was the same as the amount provided to other children. The question whether an AFDC-eligible child living with a relative at the time of removal from her parents or guardian could be eligible for foster care maintenance payments if that relative was designated a foster parent was therefore of no importance. Such a child would receive the same amount of assistance whether regarded as AFDC-eligible or as AFDC–FC–eligible.

It is nonetheless of interest that the 1961 Senate Committee Report on which the Secretary relies is not consistent with the Secretary's current interpretation of subsection (4) of the statute. That Report states:

To be eligible for foster family care the bill provides that the child must have been eligible in his own home, *or the home of one of the specified relatives*, and must have received aid in the month or for the month in which court proceedings resulting in the child's removal were initiated.

*Id.* at 1722. (Emphasis added.) Far from indicating that AFDC-eligibility must have been in the home from which the child was removed, this language, like the language of the bill it was explicating, indicates the opposite: AFDC eligibility in . *some* relative's home *at the time removal proceedings are initiated* is what matters.

In 1968, the AFDC–FC program was expanded in several ways. Among other new provisions, participation in the program was made mandatory for states participating in the AFDC program, and the amount of federal funds provided for foster children was increased above the amount available for other AFDC children. *See* Pub.L. No. 90–248, § 205(b) (1968); *Miller*, 440 U.S. at 143, 99 S.Ct. 957. Most relevant here, the statute was amended by adding subsection (4)(B).

Once again, nothing in the committee reports regarding the 1968 amendment adding § 408(a)(4)(B)(i) (today's § 672(a)(4)(B)(i)) supports the Secretary's insertion of a home of removal AFDC-linkage limitation on AFDC–FC eligibility.[20] The new subsection (4)(B)(i), expand-

ed the number of children eligible for AFDC–FC by eliminating the requirement that children actually have *received* AFDC benefits in the pertinent month. The legislative history describes subsection (4)(B)(i) as it was written—without any mention of a home of removal requirement. *See* H.R.Rep. No. 90–544, *supra,* at 101 ("The proposed change would [apply] . . . if the child is placed in foster care by court order . . . and if the child would have been eligible under the AFDC program if an application had been made on his behalf."); S.Rep. No. 90–744 *reprinted in* 1967 U.S.C.C.A.N. at 3001 (same).

The final piece of legislative history of any significance relates to the 1980 amendments to § 408, which became today's § 672 as part of the overhaul of the Social Security Act provisions governing foster care. *See* Pub.L. No. 96–272 (1980).[21] The 1980 amendments, as relevant here, added the provision that children removed from their homes pursuant to voluntary agreements could also be eligible for AFDC–FC.[22] The House Ways and Means Committee Report stated that the import of the new amendment was that "Federal AFDC matching foster care funds would be available for foster care payments *for an AFDC-eligible child* who had been removed from his or her home pursuant to a voluntary placement agreement. . . ." H.R.Rep. No. 96–136, at 6 (1979).[23] Again, there is no suggestion

**20.** We discuss the legislative history of § 672(a)(4)(B)(ii) below, as part of the substantive discussion of that section's relevance (or, as we conclude, irrelevance) to this case.

**21.** The new structure of the Social Security Act removed the reference to the definition of "dependent child" from the introductory language of § 672(a) and restructured the subsections. Neither party ascribes any significance to the difference between the former introductory language and structure and the introductory language and structure of the

present statute, and nothing in the legislative history indicates that any difference was intended. *See supra* note 14.

**22.** The inclusion of voluntary placement agreements was made permanent in 1987. *See* Pub.L. No. 100–203, § 9131 (1987).

**23.** That amendment appeared in the bill as reported to and enacted by the House of Representatives, but not in the Senate bill. H.R.Rep. No. 96–900 (1980), *reprinted in* 1980 U.S.C.C.A.N. 1561, 1571; *see also*

that the "AFDC-eligible child" had to be living in and AFDC-eligible in the *same* home from which he was removed.

In sum, nothing in the legislative history of the directly pertinent subsections of § 672(a) supports the Secretary's contention that Congress did not mean what it said in subsections (A) and (B)(i). Instead, the history indicates that eligibility for AFDC benefits on the date of the filing of a removal petition is all that matters. Whether the child is living in and AFDC-eligible in the home from which he is removed or in the home of some other relative later designated as his foster parent does not make a difference.

### (b) *The Six Month Provision of Subsection (B)(ii):*

The Secretary maintains, finally, that only subsection (B)(ii), not subsections (A) and (B)(i), is pertinent when a child is not living in the home of removal when the removal petition is filed. Viewing subsection (B)(ii) as establishing a six-month limitation for determining AFDC-eligibility, the Secretary maintains that the clock starts ticking when a child ceases living in the home from which he is removed. If the petition for removal is not filed within six months of that time, the child will never qualify for AFDC–FC benefits. The reason for the six-month limit, posits the Secretary, is to ensure that determinations of AFDC eligibility are made close to the time the child physically leaves the home from which he is ultimately legally removed.

There are several reasons the Secretary's interpretation of the scope and purpose of subsection (B)(ii) is unreasonable. First, the subsection is concerned with situations in which the child is *no longer*

Pub.L. No. 100–203. It is therefore only the House and conference deliberations that are

living in the home of a specified relative, but was in the previous six months. *See* § 672(a)(4)(B)(ii) (referring to a child who *"had been* living with a relative specified in [§ 606(a)] and would have received [AFDC] *if* in such month *he had been living with such a relative."*) (Emphasis added). In contrast, subsections (A) and (B)(i) deal with the situation here, in which the child *is* living with a specified relative when the removal petition is initiated, and is AFDC-eligible in that relative's home at that time.

The legislative history of subsection (B)(ii) confirms that the purpose of the provision was to deal with situations in which the child is *not* living in the home of a specified relative, and therefore *cannot* be AFDC-eligible, on the date the removal petition is initiated. *See* S.Rep. No. 90–744, *reprinted in* 1967 U.S.C.C.A.N. at 2864 (under the new amendment, "States would have to provide AFDC payments for children who are placed in a foster home if in the 6 months before proceedings started they *would have been eligible for AFDC if they had lived in the home of a relative."*) (emphasis added); H.R.Rep. No. 90–544 at 17 (same); S.Rep. No. 90–744, *reprinted in* 1967 U.S.C.C.A.N. at 3001 ("Also included are children placed under court order who had been living with one of the specified relatives ... within six months and *would have been eligible* upon application for AFDC *if [they] were living with such relative and were removed from the home of such relative* .... The child need not live with a relative and may be in a foster family or in a voluntary institution at the time the court makes its decision."); H.R. No. 90–744 at 101, *reprinted in* 1967

pertinent regarding the 1980 amendments.

U.S.C.C.A.N. at 3000 (same).[24]

Further, it bears noting that the language of subsection (B)(ii) contains no specification that the relative's home in which the child was living within the previous six months must be the same home from which he was removed at the end of the six months. To the contrary, subsection (B)(ii) states only that the child must have been living "with *a* [specified] relative" during the six months, and that he would have been AFDC-eligible during the month in which the removal petition was filed if in that month "he had been living with *such a relative* . . . ." (Emphasis added). The hypothetical reference is to *any* specified relative, not to a particular one.

Finally, the Secretary's suggestion that the six-month provision was inserted to assist in the enforcement of the statute's procedural protections designed to ensure that children are not unnecessarily placed in foster care is both a historical and unpersuasive. The six-month provision was added in 1968, Pub.L. No. 90–248 (1968), while the amendments imposing the procedural requirements of §§ 671(a)(15) and (16) were not added until 1980 and later.[25] *See* Pub.L. No. 96–272, § 471 (1980) (codified as 42 U.S.C. § 671); Pub.L. No. 98–378, § 11(c) (1984); Pub.L. No. 104–188,

§ 1808(a)(1) (1996); Pub.L. No. 105–89, § 101 (1997).

Further, the procedural requirements of §§ 671(a)(16) and 672(a)(1) apply only to children covered by the AFDC–FC maintenance provisions. Denying the higher AFDC–FC benefits to children who lived with their related foster parents for more than six months before removal therefore deprives children of the statutory protections designed to foster family unity and permanent placement.

Children can be and are formally removed from their parents' care and placed with relative foster parents with whom they are AFDC-eligible, regardless of whether those foster parents ever receive AFDC–FC payments. That is what happened to Anthony. Refusing children who live too long with their relatives the higher benefits that Congress has determined necessary for foster children will make it more difficult to provide for their needs, but is unlikely to reunite these children with their parents or assure them a permanent home elsewhere.

## CONCLUSION

We conclude that the Secretary's proffered interpretation is by every measure unreasonable: It is inconsistent with the statutory language as construed in light of

---

**24.** The portion of the legislative history for the 1967 amendments referring hypothetically to removal from the home of a relative in the application of B(ii) is no longer relevant. The "(removed from the home of) such a relative" language was deleted from the statute in the 1980 amendments. *See* Pub.L. No. 96–272, § 472 (1980). The excision of "removed from the home of" eliminated the only language in § 672 that even arguably supported a home of removal linkage requirement. Even that language, however, referred only to hypothetical, as opposed to actual, removal.

**25.** Section 671(a)(15) provides that state plans must assure "reasonable efforts . . . to preserve and reunify families" both before

and during foster care placement, with the proviso that "health and safety shall be the paramount concern." Section 672(a)(1) requires, as a predicate to receiving foster care maintenance payments for judicially-removed children, "a judicial determination . . . that reasonable efforts of the type described in section 671(a)(15) have been made." § 672(a)(1). Additionally, § 671(a)(16) and § 675(5)(B) prescribe, "for each child receiving foster care maintenance payments," an elaborate system of case review designed to provide periodic review of the need for continuation in foster care as well as a long term plan for each child.

*Miller;* it has no support in the statute's legislative history; and it undermines the statutory protections for foster children that Congress intended to provide. Before *Miller* held that children placed in foster care with relatives, with whom they were AFDC-eligible, could receive AFDC–FC benefits, the Secretary's interpretation of the "but for" language in the preamble might have been a reasonable construction of the statute. The Secretary's predecessor, however, chose an interpretation of the statute permitting the payment of the higher AFDC–FC benefits to such children, the Supreme Court approved that policy in *Miller* as consistent with the statute, and the Secretary continues to adhere to that understanding.

Once the *Miller* interpretation was chosen from among the reasonable constructions of the statute as a whole, the home of removal linkage requirement became an anomaly, irreconcilable with any overall coherent reading of § 672. By failing to abandon the home of removal requirement as both the statute itself and its interpretation evolved, the Secretary held on to an interpretation that simply cannot coexist with the statute as now understood. Like those who believed the Earth was flat, the Secretary cannot continue to adhere to an outmoded interpretation in the face of data to the contrary. We conclude that the Secretary's home of removal AFDC-linkage requirement is unreasonable and cannot stand.

■ We remand to the district court for a determination of what relief to grant Ms. Rosales consistent with this opinion. "The district court has considerable discretion to fashion appropriate injunctive relief, particularly where the public interest is involved." *See United States v. Akers,* 785 F.2d 814, 823(9th Cir.1986); *see also* Fed.R.Civ.P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."); *Z Channel Ltd. v. Home Box Office, Inc.,* 931 F.2d 1338, 1341 (9th Cir.1991) (district court's remedy not limited to relief sought in complaint). This remand will also give an opportunity for the State of California to reenter the litigation should it choose to do so and express its view on the appropriate form of relief.

The decision of the district court is RE-VERSED AND REMANDED.